973 P.2d 1184

**In re UNITED STATES CURRENCY
IN THE AMOUNT OF $26,980.00**

No. 2 CA–CV 97–0119.

Court of Appeals of Arizona,
Division 2, Department B.

June 25, 1998.
Review Denied March 23, 1999.

428

Barbara LaWall, Pima County Attorney By Thomas J. Rankin, Tucson, for Appellant State of Arizona.

John D. Kaufmann, Tucson, for Claimant/Appellee.

Grant Woods, The Attorney General By Cameron H. Holmes, Phoenix, for Amicus Curiae State of Arizona.

## OPINION

PELANDER, Presiding Judge.

¶ 1 In this civil *in rem* forfeiture action, the state appeals from the trial court's summary judgment in favor of claimant Beverly Gilbert. We reverse and remand.

## BACKGROUND

¶ 2 Gilbert stipulated that all of the factual allegations in the state's forfeiture complaint were true for purposes of her summary judgment motion. Although the facts are undisputed, we view them and reasonable inferences therefrom in the light most favorable to the party against whom summary judgment was entered. *Southwest Auto Painting & Body Repair v. Binsfeld*, 183 Ariz. 444, 904 P.2d 1268 (App.1995). On August 8, 1996, a package addressed to Gilbert arrived via Federal Express at the University of Arizona's (UA) Sociology Department. The package indicated a Professor Timothy Walters of Hofstra University in New York as the sender and listed his return address and phone number. Gilbert, a UA Sociology Department mailroom employee whose job did not include handling incoming mail, was off work that day. Before the package arrived, Gilbert telephoned the UA employee who received incoming mail and told her that she (Gilbert) was expecting a package. After the package was delivered to the Sociology Department, an unidentified man called, asked if the package had arrived, and indicated he would come in to pick it up, but was told that he would not be allowed to do so.

¶ 3 Suspicious of the package, the UA employee opened it, found a large sum of cash inside, and notified UA police. A UA police officer examined the opened package, notified MANTIS,[1] and took the package from the Sociology Department to the UA police office, where he met with a MANTIS officer. MANTIS officers attempted to locate and communicate with the sender of the package, but discovered that the return address and phone number were fictitious.[2] MANTIS officers then took the package to Gilbert's home, where she gave a recorded statement denying ownership of the money or knowledge of the sender, and signed a disclaimer form. Approximately one month later, after the state had served her with a notice of pending forfeiture pursuant to A.R.S. § 13–4307, Gilbert filed a claim of exemption from forfeiture pursuant to A.R.S. § 13–4304. Gilbert claimed ownership of the money as a return on a capital investment in Timothy Walters' construction business.

¶ 4 A few weeks later, the state filed this action in accordance with the Arizona statutes governing forfeiture proceedings, A.R.S. §§ 13–4301 through 13–4315. Relying on A.R.S. §§ 13–3413 and 13–2314, the state contended the $26,980 found inside the package was subject to forfeiture because it was used or intended to be used to facilitate the commission of various marijuana or narcotics-related offenses. The trial court denied Gilbert's motion to dismiss under Rule 12(b)(6), Ariz.R.Civ.P., 16 A.R.S. After the parties conducted some discovery and disclosure, however, the trial court granted Gilbert's motion for summary judgment and vacated the forfeiture trial date. In so ruling, the court concluded that the law enforcement officers had seized the package without a warrant from the UA Sociology Department, that the officers' "assertion of control

---

1. The Metropolitan Area Narcotics Trafficking Interdiction Squad, or MANTIS, is a multi-agency narcotics task force.

2. A few days later, MANTIS learned that nobody named Timothy Walters worked at Hofstra University.

over the package and its contents constituted a seizure within the meaning of the 4th and 14th Amendments," and that "the currency considered in conjunction with the nature of packaging, the incorrect sender's telephone number and the locale of both the sender and the recipient, can not [sic] sustain the long leap from reasonable suspicion to a finding of probable cause as required by A.R.S. § 1[3]–4305(A)(3)(c)." This appeal followed the trial court's entry of judgment in Gilbert's favor in the amount of $26,980, plus interest at the legal rate from the date of seizure forward.[3]

## DISCUSSION

¶ 5 Because the trial court granted summary judgment on essentially undisputed facts, we determine only if the trial court correctly applied the law to the facts. *St. Luke's Health Sys. v. State*, 180 Ariz. 373, 884 P.2d 259 (App.1994). We review *de novo* mixed questions of law and fact and pure questions of law, including matters of statutory interpretation and constitutional issues. *Tovrea Land & Cattle Co. v. Linsenmeyer*, 100 Ariz. 107, 412 P.2d 47 (1966); *In re $315,900.00 in United States Currency*, 183 Ariz. 208, 902 P.2d 351 (App.1995). A determination of probable cause in the forfeiture context also is a question of law subject to our *de novo* review. *Id.*

¶ 6 Based on its ruling that the law enforcement officers violated Gilbert's Fourth Amendment rights by seizing the package without a warrant from the UA Sociology Department, the trial court precluded the state's attempted forfeiture of the package contents and awarded the cash to Gilbert. We disagree with the trial court's analysis and conclusion for several reasons. Assuming without deciding that the Fourth Amendment exclusionary rule applies to seizures for forfeiture,[4] and that the officers seized the package by taking it from the Sociology Department, we find no constitutional violation in this particular case.[5]

¶ 7 A seizure for Fourth Amendment purposes " 'occurs when there is some meaningful interference with an individual's possessory interests in that property.' " *Garmon v. Foust*, 741 F.2d 1069, 1072 (8th Cir. 1984), *quoting United States v. Jacobsen*, 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85, 94 (1984). *See also State v. Peters*, 189 Ariz. 216, 941 P.2d 228 (1997). The state argues no meaningful interference occurred because "the government agents delivered the package to [Gilbert] before she took any steps to obtain possession of the package." As the state points out, Gilbert never possessed the package, sought to gain

---

3. The trial court stayed the proceedings pending appeal.

4. We note that A.R.S. § 13–4310(E)(3) provides: "No evidence may be suppressed in any hearing pursuant to this chapter on the ground that its acquisition by search or seizure violated constitutional protections applicable in criminal cases relating to unreasonable searches or seizures." *See also* § 13–4310(E)(2); Rule 5.3(b), Ariz. R.Crim.P., 17 A.R.S.; *In re 1976 Porsche*, 141 Ariz. 421, 424, 687 P.2d 946, 949 (App.1984) (recognizing general rule that state "has the power to enforce a forfeiture regardless of how control was obtained over the property"); *Mayor and City Council of Baltimore v. One 1995 Corvette*, 119 Md.App. 691, 706 A.2d 43 (1998) (holding that exclusionary rule does not apply to civil *in rem* forfeiture proceeding). Federal courts, however, have held that evidence obtained in violation of the Fourth Amendment is not admissible in a forfeiture action, but the action may proceed without the tainted evidence. *See, e.g., One 1958 Plymouth Sedan v. Pennsylvania*, 380 U.S. 693, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965) (evidence of liquor seized illegally from automobile inadmissible in quasi-criminal proceeding for forfeiture of auto); *United States v. One 1985*

*Cadillac Seville*, 866 F.2d 1142 (9th Cir.1989). *But cf. United States v. Ursery*, 518 U.S. 267, 292, 116 S.Ct. 2135, 2149, 135 L.Ed.2d 549, 571 (1996) (holding that federal *"in rem* civil forfeitures are neither 'punishment' nor criminal for purposes of the Double Jeopardy Clause"). Arizona courts have impliedly recognized that Fourth Amendment principles may apply to forfeiture actions. *See Wohlstrom v. Buchanan,* 180 Ariz. 389, 392, 884 P.2d 687, 690 (1994) (noting that forfeiture claimants "ought to have an opportunity to present" a "colorable [Fourth Amendment] argument," but not deciding "whether the exclusionary rule applies in this or other forfeiture proceedings"); *In re $315,900.00; In re One 1974 Mercedes Benz*, 121 Ariz. 549, 592 P.2d 383 (App.1979) (recognizing United States Supreme Court application of Fourth and Fifth Amendments to *in rem* forfeiture).

5. It is undisputed that the Sociology Department employee's opening of the package and discovery of cash therein did not offend the Fourth Amendment. *See State v. Weinstein*, 190 Ariz. 306, 947 P.2d 880 (App.1997).

possession of it, or made any claim to its contents until approximately four weeks after she had expressly denied any knowledge of the package and sender and had disclaimed ownership of or interest in its contents. Nonetheless, the officers arguably interfered with Gilbert's possessory interests in the package, and therefore seized it for Fourth Amendment purposes, when they removed it from the Sociology Department and then from the UA campus. That seizure, however, was reasonable and justified here.

¶ 8 Reasonable suspicion may authorize and support a temporary detention of property for investigative purposes. *Garmon. See also United States v. Van Leeuwen*, 397 U.S. 249, 90 S.Ct. 1029, 25 L.Ed.2d 282 (1970); *United States v. Lux*, 905 F.2d 1379 (10th Cir.1990). As Gilbert conceded in her stipulation, the officers in this case were aware that a substantial amount of cash, packaged elaborately and deceptively, had been delivered to a university employee who was not responsible for receiving her department's mail, and that the package's origin and destination cities were known to law enforcement as drug proceeds exportation and importation sites. They were also aware that a suspicious phone call had been made by an unidentified third person seeking to retrieve the package. Considering the totality of the circumstances, *see Lux*, the officers had a reasonable suspicion of criminal activity when they removed the package from the UA and temporarily detained it for further investigation. Accordingly, we find no unconstitutional interference with Gilbert's possessory interest in the property arising from those actions.

¶ 9 Contrary to Gilbert's argument that "[w]arrantless seizure is not permitted by statute," the applicable forfeiture statutes do not require a warrant for all seizures, nor do they automatically invalidate forfeiture claims stemming from warrantless seizures. Rather, A.R.S. § 13–4305(A)(3)(c), which the trial court cited, provides: "Property subject to forfeiture under this chapter may be seized for forfeiture by a peace officer ... [b]y making a seizure for forfeiture without court process if ... [t]he peace officer has probable cause to believe that the property is subject to forfeiture." "Seizure for forfeiture" does not occur until an officer has seized property *and* the government has asserted that "the property is subject to forfeiture." A.R.S. § 13–4301(8).

¶ 10 It was only after the officers had discovered the fictitious sender's name, address, and phone number, and after Gilbert had denied any knowledge of the package or sender and had disclaimed any interest in the cash, that the state first asserted its forfeiture claim. Denials, disclaimers, and abandonment are relevant factors in evaluating whether there is probable cause for the seizure and forfeiture of property. *See United States v. $83,310.78 in United States Currency*, 851 F.2d 1231 (9th Cir. 1988); *United States v. $364,960.00 in United States Currency*, 661 F.2d 319 (5th Cir. 1981). At the time the property was "seized for forfeiture" in this case, the officers had probable cause to believe that the property was subject to forfeiture. *See United States v. $215,300.00 in United States Currency*, 882 F.2d 417 (9th Cir.1989); *United States v. $83,310.78*. The lack of a warrant does not automatically defeat the state's forfeiture claim, nor does it entitle Gilbert to the money.

¶ 11 The trial court's ruling also is contrary to Arizona's current statutory framework governing civil *in rem* forfeiture actions. Under that framework, whether the property is ultimately determined to be subject to forfeiture does not depend on a showing or finding that there was probable cause at the time the property initially was seized. As the amicus curiae correctly notes, "[a]lthough some statutes require lawful seizure, or seizure with probable cause for forfeiture, as a precondition of forfeiture, Arizona's forfeiture statutes do not." Section 13–4304 lists property which is exempt from forfeiture, and the list is intended to be exclusive. *See In re 1632 N. Santa Rita*, 166 Ariz. 197, 801 P.2d 432 (App.1990). The exemptions do not include property initially seized without probable cause.

¶ 12 Thus, even assuming *arguendo* that the officers lacked probable cause when they first took possession of the package

from the UA Sociology Department, summary judgment in Gilbert's favor and dismissal of the state's forfeiture complaint conflicted with Arizona's statutory scheme and, therefore, were inappropriate. Section 13–4310(B) sets forth the procedures and available remedies when property allegedly has been improperly seized:

> If property is seized for forfeiture without a prior judicial determination of probable cause, . . . the court, on an application filed by an owner of or interest holder in the property, . . . may issue an order to show cause to the seizing agency for a hearing on the sole issue of whether probable cause for forfeiture of the property then exists. . . . If the court finds that no probable cause for forfeiture of the property then exists or if the state elects not to contest the issue, the property seized for forfeiture from the applicant shall be released to the custody of the applicant pending the outcome of a judicial proceeding pursuant to this chapter. If the court finds that probable cause for the forfeiture of the property then exists, the court shall not order the property released, except as provided in § 13–4306, subsection G.

The trial court's summary judgment for Gilbert is inconsistent with the procedural requirements of § 13–4310(B). The state is entitled to a forfeiture hearing in accordance with the procedures set forth in §§ 13–4310(D), (E) and 13–4311(B), (L), and (M). ¶ 13 Our conclusion is not altered by this court's decision in *In re $315,900.00*, which the trial court relied on. The facts, statutory framework, and procedural posture of that case were quite different from here. That case involved an appeal from the trial court's forfeiture order following a contested evidentiary hearing at which the state presented no

evidence linking the cash to drug-related offenses and failed to establish probable cause for the forfeiture, instead relying solely on the statutory inference of former § 13–4305(B), renumbered as § 13–4305(F). In contrast, the trial court in this case granted summary judgment for Gilbert based on its ruling that the officers lacked probable cause when they initially took possession of the money without a warrant. *In re $315,900.00* does not address the propriety of that ruling and does not support summary judgment for Gilbert.

¶ 14 In its judgment, the trial court suggested that the state cannot establish probable cause for forfeiture. That may or may not be so. After a hearing, the trier of fact ultimately may determine that probable cause for forfeiture is lacking, thereby defeating the state's claim. *Compare In re 1986 Chevrolet Corvette*, 183 Ariz. 637, 905 P.2d 1372 (1994), *with In re 15453 N. Second Ave.*, 185 Ariz. 35, 912 P.2d 39 (App.1996). Based on this record, however, the trial court erred in so concluding as a matter of law on summary judgment, without any evidentiary hearing.

¶ 15 We address one final issue raised by the state because it is likely to arise on remand: what evidence may be considered in evaluating and determining whether probable cause for forfeiture exists. In ruling that the officers lacked probable cause for seizure, the trial court apparently took a restrictive view, considering only those facts known to the officers when they initially removed the package from the UA Sociology Department.[6] That approach is inconsistent with the pertinent statutes.[7] Section 13–4310(B), for example, contemplates the trial court's consideration of evidence "then ex-

---

**6.** For example, the trial court did not mention facts proffered by the state that Gilbert's husband was in prison for his involvement in drug sales, that Gilbert and her husband had forfeited money in the past as a result of their involvement with illegal narcotics, that she had no plausible explanation for her receipt of the cash, and that she apparently lied to the officers when she disclaimed any interest in the cash.

**7.** The trial court's approach also differs from that followed by most federal courts, which have held that even under the more restrictive federal stat-

ute, 21 U.S.C. § 881, probable cause determinations should be based on evidence adduced up to the time of the forfeiture hearing. *See, e.g., United States v. Banco Cafetero Panama*, 797 F.2d 1154 (2nd Cir.1986); *United States v. $67,220.00 in United States Currency*, 957 F.2d 280 (6th Cir.1992); *United States v. $31,828.00 in United States Currency*, 760 F.2d 228 (8th Cir.1985); *United States v. Four Parcels of Real Property*, 941 F.2d 1428 (11th Cir.1991); *cf. United States v. $191,910.00 in United States Currency*, 16 F.3d 1051 (9th Cir.1994).

ist[ing]," at the time of the hearing, in determining probable cause. Similarly, § 13–4310(E)(2) requires the court in forfeiture hearings and determinations to "receive and consider, in making any determination of probable cause or reasonable cause, all evidence and information that would be permissible in determining probable cause at a preliminary hearing … together with inferences from the evidence and information." *See also* § 13–4311(G), (H), (K), (M).

¶16   For all of the foregoing reasons, we reverse and remand for further proceedings consistent with this decision and with the applicable statutes.

PHILLIP G. ESPINOSA, Judge, and JOSEPH W. HOWARD, Judge, concur.