171 P.3d 1240

**In the Matter of TWENTY–FOUR THOUSAND DOLLARS ($24,000) IN UNITED STATES CURRENCY.**

No. 1 CA–CV 07–0256.

Court of Appeals of Arizona, Division 1, Department D.

Nov. 29, 2007.

Andrew P. Thomas, Maricopa County Attorney By Peter S. Spaw, Deputy County Attorney, Kathleen M. Tracy, Deputy County Attorney, Phoenix, Attorneys for Appellant State of Arizona.

## OPINION

JOHNSEN, Judge.

¶ 1 The State of Arizona appeals the superior court's order dismissing, for lack of probable cause, an Application for Order of Forfeiture of $24,000 in cash that authorities interdicted at a Phoenix shipping company. Because the State offered sufficient facts that, taken together, constituted probable cause to link the cash to the sale of illegal drugs, we reverse the superior court's denial of the State's forfeiture application and remand for further proceedings.

## FACTUAL AND PROCEDURAL HISTORY

¶ 2 A Maricopa County Sheriff's Office "parcel interdiction team" was conducting an investigation at a private shipping/delivery company when it "noticed" a large box addressed to Robert Thomas of Appleman S. Electronics at 4317 East Cotton Center Boulevard in Phoenix.[1] The label on the box identified the sender as Shawn Brown; it showed his return address as The UPS Store in Cambridge, Ohio.

¶ 3 Officers attempted to contact Thomas and Brown but were unsuccessful. They were unable to locate a "Robert Thomas" associated with the listed Phoenix address. Brown had not left his address with the shipping company. He had given a telephone number, but the woman who answered the telephone said she had a different last name and that she did not send any parcels to Arizona. Workers at the store from which the box had been shipped told officers that Brown had paid the shipping fee in cash and had been adamant about obtaining a tracking number for the package.

¶ 4 Officers introduced a "certified narcotics K–9" to the carton, and the dog "had a

positive alert to the box." When officers opened the package, they found another box inside containing cash totaling $24,000. The cash had been soaked in rubbing alcohol and was wrapped in plastic secured by duct tape.

¶ 5 The State filed a Notice of Seizure for Pending Forfeiture and Notice of Pending Forfeiture and, pursuant to Arizona Revised Statutes ("A.R.S.") section 13–4307(3) (2001), published notice of the seizure. When no response was received within the statutory time, the State filed a forfeiture application, asserting that the money was subject to forfeiture under A.R.S. §§ 13–2314(G) (2001) and –3413(B) (2001).

¶ 6 The superior court denied the application on the ground the State had not met its burden of showing probable cause that the money was subject to forfeiture. Citing *In re United States Currency in the Amount of $315,900.00*, 183 Ariz. 208, 211, 902 P.2d 351, 354 (App.1995), the court found that "the totality of the circumstances fail to support more than a 'mere suspicion' that the property in question is subject to forfeiture." The State timely appealed. We have jurisdiction pursuant to A.R.S. § 12–2101(B) (2003).

## DISCUSSION

### A. Legal Principles and Standard of Review.

¶ 7 Under Arizona's forfeiture statutes, A.R.S. §§ 13–4301 to –4315 (2001 & Supp.2006), "property is subject to forfeiture if some other statute provides for such a remedy." *In re $315,900.00*, 183 Ariz. at 210, 902 P.2d at 353 (quoting *In re 1986 Chevrolet Corvette*, 183 Ariz. 637, 639, 905 P.2d 1372, 1374 (1994)). In a case such as this, where the forfeiture application is based on racketeering allegations, the required elements are an occurrence of an act of racketeering, *see* A.R.S. § 13–2301(D)(4) (Supp.2006), and a link between the property to be forfeited and the alleged racketeering conduct, *see* A.R.S. § 13–2314(G). In its forfeiture appli-

---

1. We relate facts recited in the State's verified forfeiture application. Because that application was unopposed in the superior court (and on

appeal), the facts offered in support of that application are undisputed.

cation, the State alleged racketeering involving the sale of prohibited drugs for financial gain and money laundering. A.R.S. § 13–2301(D)(4)(b)(xi), (xxvi).[2] The State further alleged the cash was subject to forfeiture pursuant to section 13–2314(G)(3), which permits forfeiture of "proceeds traceable" to a drug offense and "monies ... used or intended to be used in any manner or part to facilitate the commission of the offense."

¶ 8 "Property subject to forfeiture ... may be seized for forfeiture by a peace officer" without court process if the "officer has probable cause to believe that the property is subject to forfeiture." A.R.S. § 13–4305(A). After seizure, the State may commence a judicial in rem forfeiture such as this by filing a Notice of Pending Forfeiture pursuant to A.R.S. § 13–4311(A) ("If a forfeiture is authorized by law, it shall be ordered by a court on an action in rem brought by the state pursuant to a notice of pending forfeiture ...."). If a claimant asserts ownership of or an interest in the property, the matter proceeds to a hearing after discovery. A.R.S. § 13–4311(D)–(M). When, as here, no claimant comes forward, the State "shall apply to the court for an order of forfeiture and allocation of forfeited property," which shall be granted upon showing of "jurisdiction, notice and facts sufficient to demonstrate probable cause for forfeiture." A.R.S. § 13–4314(A).[3]

■ ¶ 9 In a case such as this, in which the State alleges that currency is subject to forfeiture based on a drug-related racketeering offense under A.R.S. § 13–2314(G)(3), the State must demonstrate probable cause to believe that the currency is a proceed of or facilitated a drug sale. *See* A.R.S. § 13–2301(D)(4)(b)(xi); *In re $315,900.00,* 183 Ariz. at 211, 902 P.2d at 354 (State must show probable cause "to believe the substantive standard has been satisfied" (quoting *In re 1986 Chevrolet Corvette,* 183 Ariz. at 640, 905 P.2d at 1375)).

■ ¶ 10 The State is not required to show that officers had probable cause at the time they initially seized the property. *In re U.S. Currency in the Amount of $26,980.00,* 193 Ariz. 427, 430, ¶ 11, 973 P.2d 1184, 1187 (App.1998). Instead, probable cause is determined based upon all the evidence at the time of the hearing, including evidence collected after the initial seizure. *Id.* at 431–32, ¶ 15, 973 P.2d at 1188–89.

■ ¶ 11 "To meet this burden, the [S]tate must demonstrate reasonable grounds for its belief that the property is subject to forfeiture, supported by more than a mere suspicion, but less than prima facie proof." *In re $315,900.00,* 183 Ariz. at 211, 902 P.2d at 354 (quoting *In re 1986 Chevrolet Corvette,* 183 Ariz. at 640, 905 P.2d at 1375). "[T]he existence of probable cause is judged not with clinical detachment, but with a common sense view to the realities of normal life." *United States v. Four Parcels of Real Prop. in Greene & Tuscaloosa Counties,* 941 F.2d 1428, 1440 (11th Cir.1991) (internal quotation marks and citations omitted).

¶ 12 In forfeiture cases, we review the trial court's probable cause determination *de novo* because it involves a question of law. *In re $315,900.00,* 183 Ariz. at 211, 902 P.2d at 354. We will not disturb the trial court's factual findings, however, unless they are clearly erroneous. *Id.*

## B. Probable Cause Based on the Totality of the Circumstances.

■ ¶ 13 Under Arizona law, suspicion, surmise and supposition concerning the origin of confiscated property are not enough to support a probable cause finding in a civil forfeiture context. *Id.* at 214, 902 P.2d at 357. Instead, when, as here, the State alleges that currency it has seized is a proceed of or facilitated a drug offense, "[t]o pass the point of mere suspicion and to reach probable cause, it is necessary to demonstrate by some *credible evidence* the probability that the money was in fact connected to drugs."

---

**2.** Although the forfeiture application cited the money-laundering provision, the State argued in the superior court and on appeal only that the cash was connected in some way to a prohibited drug transaction.

**3.** Because jurisdiction and notice are not at issue in this case, we address only whether probable cause supported the State's forfeiture application.

*Id.* at 213, 902 P.2d at 356 (quoting *United States v. U.S. Currency, $30,060.00,* 39 F.3d 1039, 1041 (9th Cir.1994)).

¶ 14 Such evidence is not viewed one item at a time; rather, we consider the totality of the circumstances to determine whether the State has shown probable cause for forfeiture. *In re $26,980.00* illustrates the analysis we must employ here. In that case, a private shipping company delivered a package addressed to an employee of the University of Arizona's Sociology Department. 193 Ariz. at 428, ¶ 2, 973 P.2d at 1185. The employee had called the Sociology Department to say she was expecting a package. Before she arrived to retrieve it, however, an unidentified person called and indicated he would come to pick up the package. *Id.* Having grown suspicious, the person keeping watch over the package opened it and found $26,980 in cash. *Id.* at ¶ 3. Police officers who were summoned attempted to contact the package's sender, but were unsuccessful because the name on the shipping label was fictitious. *Id.* Officers then contacted the employee to whom the package was addressed. *Id.* At first, she denied knowing anything about the package or the sender; a month later, however, the employee made a claim for the package. *Id.* After the State filed an action for forfeiture, the superior court granted summary judgment in favor of the package's recipient, finding "the currency[,] considered in conjunction with the nature of packaging, the incorrect sender's telephone number and the locale of both the sender and the recipient, can not [sic] sustain the long leap from reasonable suspicion to a finding of probable cause." *Id.* at 428–29, ¶ 4, 973 P.2d at 1185–86.

¶ 15 The court of appeals reversed, holding that the superior court improperly evaluated probable cause based solely on evidence available to officers when they initially seized the money and did not give due weight to the totality of the circumstances existing at the time of the hearing, including that the package contained a substantial amount of cash and was packaged elaborately and deceptively, the package's origin and destination cities were known to law enforcement as drug proceeds exportation and importation cities, the suspicious phone call by the individual seeking to retrieve the package, the fact that the shipping label contained a fictitious name, address, and phone number for the sender, and that the recipient (at first) denied knowledge of the package and sender. *Id.* at 430–31, ¶¶ 8–14, 973 P.2d at 1187–88.

¶ 16 As we consider the totality of circumstances that might bear on probable cause in this case, the State invites us to hold that probable cause may be established if the facts surrounding the package fit within a "drug-package profile." Specifically, the State urges us to apply a "drug-package profile" established by the United States Postal Service ("USPS") as a means of alerting investigators and postal employees to possible drug-related packages. *See United States v. Hernandez,* 313 F.3d 1206, 1211 (9th Cir.2002) (approving use of profile in Fourth Amendment probable-cause analysis); *United States v. Daniel,* 982 F.2d 146, 150–51 (5th Cir.1993) (applying profile factors in analysis of temporary seizure of package pursuant to the Fourth Amendment); *United States v. Lux,* 905 F.2d 1379, 1381–82 (10th Cir.1990) (applying USPS profile in analysis of detention of package under Fourth Amendment); *United States v. Cantrall,* 762 F.Supp. 875, 878–80 (D.Kan.1991) (same).

¶ 17 The USPS drug-package profile identifies packages that:

1. Are of a particular size and/or shape.
2. Are heavily taped so that all openings are sealed.
3. Bear hand-written labels.
4. Bear unusual return names and addresses.
5. Emit unusual odors.
6. Bear fictitious return addressees.
7. Are sent to particular destinations.

*United States v. Hill,* 701 F.Supp. 1522, 1526 (D.Kan.1988) (motion to suppress). As the court in *Hill* explained:

The Drug Package Profile does not contain completely arbitrary criteria. Instead, the profile was developed at a national level and was based on information gleaned from national investigations of narcotics mailings. Although the court recognizes that some of the profile's elements, stand-

ing alone, would not be sufficient to form the basis for a reasonable suspicion that a package contains narcotics, in combination, these elements do provide the authorities with specific facts sufficient to form the required reasonable suspicion.

*Id.* at 1528.

¶ 18 The courts cited above that have applied the USPS drug-package profile each did so in the context of determining whether reasonable suspicion supported an initial seizure of a package as required by the Fourth Amendment. As the superior court noted in this case, our forfeiture statutes require a showing of probable cause, which of course is a higher burden of proof than reasonable suspicion. Nevertheless, we conclude that the factors listed in the USPS drug-package profile and used in the authorities cited above are a useful non-exclusive catalog of elements to consider in determining the existence of probable cause for forfeiture of property allegedly linked to illegal drug trade under Arizona law.

¶ 19 In arriving at this conclusion, however, we caution that the USPS profile (or any similar drug-package profile) should not be applied arbitrarily. For example, referring to the "particular destination" factor in the USPS list, given that the State argues that Arizona is a "drug proceeds importation" state, any package shipped here from a "drug proceeds exportation state" could be subject to some suspicion.[4] By the same token, the USPS list would give authorities reason to look with interest at any package bearing a handwritten shipping label. Based on those two criteria alone, a hand-addressed box of cookies shipped by a mother living in Chicago to her daughter attending college in Tucson or Tempe would be subject to inquiry.

■ ¶ 20 As noted, however, in assessing probable cause for forfeiture, we do not rely solely on evidence known to officials at the time they open a parcel or when they choose

to interdict it. Instead, we examine all the evidence existing at the time of the hearing. *In re $26,980.00*, 193 Ariz. at 430, ¶ 11, 973 P.2d at 1187. Although the State would have no legal interest in seizing a hand-addressed box of cookies on its way from Chicago to Tucson or Tempe, officials might have a different view if the package contained cash instead of cookies. And although it might not be out of the question that a parent would send cash to her daughter in college, it likely would be highly probative for purposes of probable cause if a box shipped from Chicago to Tucson or Tempe contained cash wrapped in a vacuum-sealed plastic bag. This is because, according to the forfeiture application, drug traffickers often try to mask the scent of drugs with vacuum-sealed bags and double-packaging. *See, e.g., Hernandez*, 313 F.3d at 1211 ("traffickers often tape the seams of drug packages in order to conceal the scent of the contraband from narcotics detector dogs"). Accordingly, although we do not hold that any one specific factor or any specific number of factors listed in any established drug-package profile automatically establishes probable cause for forfeiture, we agree that when considered in the totality of the circumstances, the presence of any of the listed factors may contribute to a probable cause finding.

## C. Analysis of the Facts in this Case.

■ ¶ 21 The State argues there was probable cause to believe the cash seized in this case was a proceed of or facilitated an illegal drug transaction based on evidence that the package was shipped from an alleged drug-demand location to a drug-source location; the currency had been soaked in rubbing alcohol and placed within a plastic bag that was sealed with duct tape and itself placed within an electrical-appliance box;[5] the addresses, phone number and names on the package's label were false; no one claimed or sought the return of the currency; and a certified narcotics canine positively

---

4. *See United States v. Dennis*, 115 F.3d 524, 538 n. 4 (7th Cir.1997) (Ripple, J., concurring in part and dissenting in part) (criticizing law enforcement reliance on the significance of so-called "drug source" locations).

5. Although the State argues on appeal that the cash was placed inside an electrical appliance, the forfeiture application presented to the superior court alleged the currency was found within an appliance box, not within an actual appliance.

alerted to the package. Bearing in mind that probable cause turns on the totality of the evidence, we address the probative value of each of these factors in turn.

### 1. Origin and destination of the package.

¶ 22 The State argues that the fact that the package was sent from Ohio, an alleged drug-demand location, to Arizona, an alleged drug-source location, contributes to a proba-ble-cause finding. In its verified application, the State asserted, "It is common for drug traffickers to send currency *from* drug de-mand locations (areas located largely in the Midwestern and Eastern portions of the United States) *to* drug source locations (ar-eas located within the Southwestern United States)." We acknowledge that, as the State alleges, drug-enforcement authorities have concluded that cash linked to illegal drug trade often is shipped into Arizona from pur-ported drug-demand locations outside the state. *See United States v. $22,474.00 in U.S. Currency,* 246 F.3d 1212, 1216 (9th Cir. 2001) ("Phoenix [is] a known source city for drugs."). Therefore, we treat as tending to establish probable cause the fact that the currency at issue was shipped from Ohio to Arizona.

### 2. Treatment of the currency.

¶ 23 The State asserts that the manner in which the currency was wrapped also con-tributes to a probable-cause finding because the package "shares many characteristics with attempts to conceal drug odors attached to drug-related currency." Consistent with its contention that packages shipped into Ari-zona from "drug-importation" states often contain cash payments for drugs exported from Arizona, the State's forfeiture applica-tion asserted, "It is common practice for drug traffickers to pay *cash* for delivery of drugs and currency so that their true identi-ty cannot be discovered by law enforcement if the package is intercepted." Moreover, asserted the State, "It is common practice for drug traffickers to attempt to mask the odor of the drugs by double or triple boxing and placing masking agents such as perfume or fabric softener on packing foam, paper

towels and/or foam peanuts to avoid detec-tion by narcotics canines."

¶ 24 A "substantial amount of cash, pack-aged elaborately and deceptively," has been held to constitute a relevant factor in evaluat-ing probable cause for forfeiture. *In re $26,980.00,* 193 Ariz. at 430, ¶ 8, 973 P.2d at 1187; *see also United States v. $242,484.00,* 389 F.3d 1149, 1161 (11th Cir.2004) ("A com-mon sense reality of everyday life is that legitimate businesses do not transport large quantities of cash rubber-banded into bun-dles and stuffed into packages in a backpack. They don't, because there are better, safer means of transporting cash if one is not trying to hide it from the authorities."); *United States v. Currency, U.S. $42,500.00,* 283 F.3d 977, 982 (9th Cir.2002) ("We find significant that the money was wrapped in cellophane. Unlike a purse or money pouch, cellophane is not a normal repository for carrying large amounts of money. Rather cellophane, which is largely impermeable to gas, is commonly used to conceal the smell of drugs and avoid detection by drug dogs.").

¶ 25 The cash in the package in this case had been soaked in rubbing alcohol, wrapped in a plastic bag, sealed with duct tape and placed inside a box packed inside another box. In the totality of the circumstances, the money's packaging contributed to a probable cause finding.

### 3. False identifying information; failure to claim proceeds.

¶ 26 The State also argues that false infor-mation on the package's label and the failure of anyone to claim the currency further con-tribute to a probable cause finding.

¶ 27 Fictitious names, addresses and phone numbers on the shipping label, and similarly, denials, disclaimers and abandon-ment of the package, are relevant factors to consider when determining probable cause. *In re $26,980.00,* 193 Ariz. at 430, ¶ 10, 973 P.2d at 1187; *see also Hernandez,* 313 F.3d at 1211 ("[D]rug traffickers, generally wish-ing to conceal their identities, often use ficti-tious names. A fictitious name or address . . . is a highly reliable indicator of the pres-ence of controlled substances."); *$42,500.00,*

283 F.3d at 984 (Failure to come forward and claim title to money "raises a strong inference that the [money is] not as valuable as preserving the secrecy of the owner's identity." (quoting *United States v. $321,470.00, U.S. Currency,* 874 F.2d 298, 304 (5th Cir. 1989))).

¶ 28 In this case, officers determined that the package label contained fictitious addresses for the sender and recipient, as well as a fictitious phone number for the sender. Along with the failure of anyone to claim the currency, these factors, considered in the aggregate, contribute to a probable cause finding.

### 4. Dog alert.

¶ 29 Finally, the State argues probable cause existed because a "certified narcotics" dog alerted to the package. Although courts have struggled to reach a consensus about the probative value to be given dog alerts, more recent decisions recognize the scientific validity of an alert by a properly trained detection dog. *Compare $30,060.00,* 39 F.3d at 1041–42 (courts "have questioned the probative value of positive dog alerts due to the contamination of America's paper money supply with narcotics residue") *with $22,474.00,* 246 F.3d at 1216 (recognizing probative value of evidence that dog would not have alerted unless currency "had recently been in the proximity of cocaine") *and United States v. Funds in the Amount of Thirty Thousand Six Hundred Seventy Dollars ($30,670.00),* 403 F.3d 448, 462 (7th Cir.2005) ("The publicly available empirical information offered in this case supports the conclusion that no properly trained dog could have alerted to [the currency] if it had contained only innocently tainted bills."). Although the State did not offer a detailed explanation of the canine alert in this case,[6] we are persuaded by the caselaw that such alerts are entitled to some probative value and conclude that the fact that a certified canine alerted to the package in this case may contribute to a probable cause finding.

---

**6.** On this point, the forfeiture application said merely, "A certified narcotics K–9 had a positive

¶ 30 We recognize that probable cause is not established merely because currency has been or is found in the presence of illegal drugs. In *In re $315,900.00,* the case cited by the superior court in dismissing the forfeiture application, officers pulled a man over for driving erratically and discovered bundles of currency in a shoebox behind the rear seat of his car. They also found a bag containing four ounces of marijuana in the space between the front seats. 183 Ariz. at 210, 902 P.2d at 353. The State alleged the money was used or intended to be used in a racketeering offense involving drugs, and relied on A.R.S. § 13–4305(B), now renumbered as § 13–4305(F) (2001), for its statutorily created inference that money found in proximity to contraband is contraband proceeds. *Id.* at 211, 902 P.2d at 354. The court rejected the State's argument and ruled the statutory inference unconstitutional as applied to the facts of that case. *Id.* at 213–14, 902 P.2d at 356–57. That a person both uses or is around drugs and has a large amount of cash with him, the court concluded, "without more, does not support a probable cause determination for forfeiture of the currency." *Id.* at 214, 902 P.2d at 357.

¶ 31 In this case the dog alert provided a significantly stronger link between the currency and illegal drug trade than the mere proximity of the shoebox to the bag in the car in *In re $315,900.00.* The fact that a canine trained to signal the presence of drugs alerted to the package in question means that the contents of the package were exposed in some fashion to drugs. *See, e.g., $30,670.00,* 403 F.3d at 459; *$22,474.00,* 246 F.3d at 1216; *cf. Illinois v. Caballes,* 543 U.S. 405, 409, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005) (canine alert "by a well-trained narcotics-detection dog . . . 'discloses only the presence or absence of narcotics' " (quoting *United States v. Place,* 462 U.S. 696, 707, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983))). More importantly, viewed in the aggregate along with the other factors noted above, the dog alert and the other evidence establish reasonable grounds for the government's belief that

alert to the box."

the currency was a proceed of or facilitated a drug-related racketeering offense.

## CONCLUSION

¶ 32 Although any one factor cited by the State might not have been sufficient by itself to connect the currency to a drug-related racketeering offense, we do not consider the factors in isolation but instead consider the totality of the circumstances. Based on that review, we conclude the State satisfied its burden of showing probable cause for forfeiture of the currency at issue. Therefore, we reverse the superior court's decision and remand for further proceedings.

CONCURRING: JON W. THOMPSON, and SUSAN A. EHRLICH, JJ.

