303 P.3d 59

**STATE of Arizona ex rel. Thomas C. HORNE, Plaintiff/Appellee,**

v.

**Saskia ANTHONY; Gregory Glass; and Vance Edwards, Claimants/Appellants.**

No. 1 CA–CV 11–0796.

Court of Appeals of Arizona,
Division 1, Department D.

May 21, 2013.

Greenberg Traurig, LLP by Booker Travis Evans, Jr., Alexandra Mijares Nash, Phoenix, Attorneys for Claimants/Appellants.

Thomas C. Horne, Arizona Attorney General by Aaron S. Ludwig, Assistant Attorney General, Katrin M. Nelson, Assistant Attorney General, Phoenix, Attorneys for Plaintiff/Appellee.

## OPINION

KESSLER, Judge.

¶ 1 Claimants/Appellants Saskia Anthony, Gregory Glass, and Vance Edwards (collectively "Appellants") appeal from the superior court's order directing the forfeiture of three vehicles. We affirm based upon the Appellants' untimely and deficient answer to the complaint and the evidence supporting probable cause.

## FACTUAL AND PROCEDURAL HISTORY

¶ 2 In May 2005, Chandler police officers executed a search warrant at the Chandler residence of Levin White and his wife, Kellie Anthony (collectively the "Racketeering Defendants"). Along with hundreds of thousands of dollars in cash, drugs, guns, ammunition and fake drivers' licenses and identification cards, the officers seized a black 2001 Mercedes Benz S600, a white 2000 Jaguar S-Type, and a blue 1996 Chevy Impala SS (collectively "the Vehicles"). Registration records indicated that the Vehicles' respective owners were Appellants. White told an officer that he had bought the vehicles legally and for half of what they were worth. When asked why he held no property in his name, White responded that he did it "to keep 'you guys outta my business.'" In May 2007, pursuant to Arizona Revised Statutes ("A.R.S.") sections 13–4307 (2010), –4308 (2010), and –4311 (2010), the

State of Arizona ("State") filed a Notice of Pending Forfeiture and Notice of Seizure for Forfeiture against numerous defendants, including the Racketeering Defendants and Appellants, and seeking forfeiture of various property, including the Vehicles.[1]  In June 2007, the Racketeering Defendants made a filing in that same case entitled "Claimants Levin White and Kellie Diane Anthony's Verified Claim."  Although signed by the Racketeering Defendants' counsel and appending affidavits executed by the Appellants, the claim contained no verification by either of the Racketeering Defendants.  According to that filing, Appellants owned the Vehicles, the Vehicles were not acquired with funds derived from illegal activity, neither of the Racketeering Defendants had provided funds to acquire the Vehicles, and the Vehicles should be returned to the Racketeering Defendants for safekeeping.

¶ 3  On July 19, 2007, the State filed a complaint for an order of forfeiture against the Racketeering Defendants in connection with racketeering activity.  The complaint named both the Racketeering Defendants and the Appellants as parties "in that they have timely filed claims pursuant to A.R.S. § 13–4311."

¶ 4  The complaint seeks in rem racketeering forfeiture under A.R.S. § 13–2314(G) (2010), and pursuant to the procedures outlined in A.R.S. §§ 13–4301 through –4311.  It alleges that the Racketeering Defendants participated in or assisted a criminal syndicate; engaged in money laundering; produced, sold, or transported drugs; and engaged in various preparatory offenses.  *See* A.R.S. §§ 13–2308 (2010), –2317 (2010), –3405 (Supp.2012), –3408 (2010), –1001 through –1004 (2010), –2301(D) (2010).  Specifically, the State claims that the Racketeering Defendants "laundered the proceeds from illegal drug trafficking activity through the purchase of vehicles and other items of personal property."

¶ 5  The State mailed the complaint with a waiver of service form to counsel for Appellants.  That form stated that if the Appel-

lants waived service, they would have sixty days from August 29, 2007, which is October 29, 2007, to file an answer.  Counsel for Appellants signed the form.  The Racketeering Defendants, Kellie A. Consulting LLC, and Milestone Trust, filed an unverified joint answer on October 9, 2007.  The State moved for entry of judgment on the basis that the Appellants had not filed an answer, and the Racketeering Defendants had filed answers that were neither verified nor compliant with A.R.S. § 13–4311(G).

¶ 6  In response, the Racketeering Defendants filed a verified answer on November 8, 2007, that included: (1) verifications by the Racketeering Defendants individually and on behalf of Kellie A. Consulting LLC, Milestone Trust, and Appellants; and (2) affidavits by Appellants.  The answer states that Appellants:

> did not file Notices of Claim in this action.  Rather, each filed an affidavit relinquishing their interests in the property to Kellie D. Anthony.  These affidavits further allowed Ms. Anthony to act on their behalf, thus, Ms. Anthony files this Verified Answer.  The affidavits of each are attached hereto as Exhibit A.

The Racketeering Defendants claimed in the superior court that the amended answer cured any defect.

¶ 7  Extensive litigation ensued.  Among other things, the superior court denied the State's objections and motions to strike the Racketeering Defendants' verified answer and claim.  Those rulings contained no determinations as to whether Appellants were parties.

¶ 8  During discovery, Appellants failed to definitively answer questions about their Vehicles' purchase dates, the sellers, and the purchase prices.  Various superior court filings address whether Appellants were parties.  In one filing, the Racketeering Defendants asserted that the Appellants are "not parties to this action but are merely witnesses who would testify that they purchased the [V]ehicles with untainted funds and that

---

1.  We cite the current version of the applicable statute because no revisions material to this deci-

sion have since occurred.

they authorized [the Racketeering Defendants] to possess and control" the Vehicles. Appellants' counsel similarly took the position that Appellants were not parties.

¶ 9 At a March 3, 2009 status conference, the State cited A.R.S. § 13–4301(5) and (4) as authority that the Racketeering Defendants qualified as neither parties nor claimants with respect to the Vehicles.[2] The court agreed with the State that Appellants were "appropriate parties" to the litigation and counsel for the Racketeering Defendants told the court that he would be representing Appellants.

¶ 10 The superior court accordingly ordered Appellants to "file responsive pleadings within the time limits set forth in the Rules." Appellants failed to file by the twenty-day deadline under A.R.S. § 13–4311(G), and instead filed motions to dismiss on April 2, 2009, which the State opposed and the court denied.

¶ 11 On April 30, 2009, after the State applied for an order of forfeiture based upon the Appellants' failure to comply with the statutory requirements, Appellants filed a verified answer, although only Glass submitted a concurrent verification. The State moved to strike the Appellants' answer based on the failure to comply with A.R.S. § 13–4311(E) and (G), and supplied a supplemental affidavit containing facts concerning the Vehicles.

¶ 12 The superior court granted the State's motion to strike Appellants' answers, deemed the arrangement with the Vehicles a "sham," and stated that the three Appellants did not own the Vehicles and did not need to be "cluttering up this litigation." The superior court also made findings regarding notice, jurisdiction, and facts sufficient to establish probable cause for forfeiture and granted the forfeiture application. At a joint status conference, Judge Akers, newly assigned to the case, ordered the State to supply the proposed form of order. The State complied, and the superior court signed an Arizona Rule of Civil Procedure 54(b) order of forfeiture. Appellants timely appealed.

¶ 13 We have jurisdiction pursuant to A.R.S. §§ 12–120.21(A)(1) (2003) and –2101(A)(1) (Supp.2012).

## DISCUSSION

### I. The superior court properly struck Appellants' answer and granted the State's application to proceed with forfeiture based upon Appellants' failure to comply with A.R.S. § 13–4311(G).

¶ 14 To preserve a claim to property seized for forfeiture, a party must file both a claim and an answer in compliance with A.R.S. §§ 13–4311(D)–(E) and (G), respectively. *See* A.R.S. § 13–4311(E) (requiring a person claiming an interest to file a verified claim setting forth among other things, the date and circumstances of the acquisition of the property and the reason why the property is not subject to forfeiture); A.R.S. § 13–4311(G) (permitting the state to proceed with forfeiture with ten days' notice to any person who timely filed a claim but did not file an answer; claimant has twenty days to file an answer after filing claim); *State v. Jackson,* 210 Ariz. 466, 471–72, ¶¶ 25–28, 113 P.3d 112, 117–18 (App.2005) (holding that appellant had an obligation to file an answer under the statutory scheme and his failure to do so permitted the state to proceed with forfeiture); *accord State v. $5,500 in U.S. Currency,* 169 Ariz. 156, 159, 817 P.2d 960, 963 (App.1991).

¶ 15 Assuming, without deciding, that Appellants properly filed a claim, we focus our attention on whether Appellants complied with the answer requirement once the superior court determined that they were parties on March 3, 2009.[3] We review *de novo* the superior court's interpretation of the relevant statutes and court rules. *State v. Gutierrez,*

---

**2.** According to section 13–4301(5), "[a] person who holds property for the benefit of or as agent or nominee for another is not an owner." Thus, an owner is a person who holds a legal or equitable interest in property. To qualify as an interest holder, one must be "a person in whose favor there is a security interest or who is the beneficiary of a perfected encumbrance, pertaining to an interest in property." A.R.S. § 13–4301(4).

**3.** The State's complaint acknowledges that it received timely claims from Appellants.

229 Ariz. 573, 576, ¶ 19, 278 P.3d 1276, 1279 (2012).

¶ 16 According to A.R.S. § 13–4311(B), the Arizona Rules of Civil Procedure govern forfeiture proceedings unless a statute provides different procedures. Pursuant to A.R.S. § 13–4311(G), Appellants had twenty days from the March 3, 2009 hearing to file and serve their answer. Instead, they submitted motions to dismiss on April 2, 2009. Notwithstanding Appellants' contrary arguments, the failure to timely file these motions constituted a default and deprived Appellants of an extended time to answer. *See* A.R.S. § 13–4311(G); *accord* Ariz. R. Civ. P. 12(a)(1)(A), (a)(3)(A).[4]

¶ 17 According to A.R.S. § 13–4311(G): "If no proper answer is timely filed, the attorney for the state shall proceed as provided in §§ 13–4314 and 13–4315 with ten days' notice to any person who has timely filed a claim that has not been stricken by the court." The State applied for an order of forfeiture based upon the Appellants' failure to timely respond and, under these circumstances, the superior court properly granted it.

¶ 18 On appeal, Appellants argue that: (1) they are entitled to a ten-day grace period to file an answer following the State's filing of its application for an order of forfeiture; (2) their prior filings should be construed as answers; (3) they are entitled to an extension of time based upon the waiver of service they executed in 2007; and (4) the State has waived its right to object. We disagree.

### A. A.R.S. § 13–4311(G) does not supply a ten-day grace period.

¶ 19 Appellants contend that, although they failed to file within the twenty-day period after March 3, 2009, their answer is timely because a ten-day grace period is provided under A.R.S. § 13–4311(G). Although A.R.S. § 13–4314 may be "the functional equivalent of a default judgment," *Jackson,* 210 Ariz. at 469, ¶ 13, 113 P.3d at 115, A.R.S. § 13–4311(G) provides the controlling procedures. Subsection (G) requires the State to proceed with an application for

forfeiture in accordance with A.R.S. §§ 13–4314 and –4315 with ten days' notice. The forfeiture application is filed "with" the notice, not after the notice is given. A.R.S. § 13–4311(G).

¶ 20 Nowhere in the statute is there a reference to a grace period. *Jackson* states that the failure to timely answer "triggered the provision that the state 'shall proceed as provided in §§ 13–4314 and –4315.'" 210 Ariz. at 471, ¶ 22, 113 P.3d at 117 (quoting A.R.S. § 13–4311(G)). *Jackson* goes on to state that "the plain language of § 13–4311(G) expressly provides that §§ 13–4314 and –4315 apply even though a timely claim *has been* filed so long as a timely answer *has not* been filed." *Id.* at ¶ 24.

¶ 21 *Jackson* notes that the applicable party in that case failed "to answer the state's complaint after receipt of the ten-day letter specified in § 13–4311(G)," therefore invoking the default mechanisms. *Id.* at ¶ 25. To the extent that *Jackson* suggests that a filing within the ten-day period would preserve the answer, we reject that assertion.

¶ 22 As the State points out, the ten-day notice period serves various purposes that have no connection to a grace period, including notification: (1) of the impending order of default to which the defendant may take an appeal or file a Rule 60(c) motion; (2) to non-defaulting claimants who wish to appear and protect their interest in the property; and (3) to injured claimants who are not required to file answers pursuant to A.R.S. § 13–4311(1), and to claimants whose interests are undetermined but exempt under A.R.S. § 13–4314(C) so that they may take appropriate action to protect whatever interests they might have.

### B. The prior filings are not functional equivalents of answers and the waiver of service does not assist Appellants.

¶ 23 Equally unavailing is Appellants' argument that the Racketeering Defendants' prior filings should be deemed the functional

---

4.  While certain types of motions to dismiss may qualify as a responsive pleading under the Arizona Rules of Civil Procedure 12(a)(3), 12(b) and

55, the motions still have to be filed within the time to file an answer. Appellants did not timely file their motions to dismiss to avoid a default.

equivalent of answers, or that their execution of a waiver of service of summons extended the time to answer by sixty days. Appellants' counsel admitted on March 3, 2009, that Appellants had not filed answers and the record shows no answers filed by them. Moreover, to accept Appellants' argument, we would have to ignore the statutory scheme requiring the filing of an answer after the filing of the complaint. Consequently, we reject Appellants' argument that any prior filings satisfied the answer requirement.

¶ 24 As to the waiver of service, Arizona Rule of Civil Procedure 4.1(c)(3) of the Arizona Rules of Civil Procedure provides that "[a] defendant that, before being served with process timely returns a waiver so requested is not required to serve an answer to the complaint until 60 days after the date on which the request for waiver of service was sent." Because the waiver of service occurred in 2007 and the additional sixty-day period had already expired by March 2009, the rule is of no use to Appellants. Appellants cannot successfully claim another extension beyond 2007.

### C. The State preserved its right to challenge the answer.

¶ 25 Appellants argue the State waived the right to challenge their answer. We disagree. This is not a case akin to *State ex rel. Horne v. Campos*, 226 Ariz. 424, 430, ¶ 24, 250 P.3d 201, 207 (App.2011), in which the court found that, after waiting three years to object to the party's failure to file a claim, the State had waived its right to raise the issue. Here, the State has consistently maintained that the Racketeering Defendants could not litigate Appellants' ownership claims for them. *Campos* does not apply.

### II. Probable cause supported the entry of the forfeiture order.

### A. The detectives' evidence satisfied the State's burden of proof.

¶ 26 Appellants additionally challenge the superior court's probable cause determination. Before granting a forfeiture application, the superior court must make determi-

nations concerning notice, jurisdiction, and facts sufficient to establish probable cause for forfeiture. A.R.S. § 13–4314(A). We review the probable cause determinations in forfeiture actions *de novo*. *In re U.S. Currency in the Amount of $315,900.00*, 183 Ariz. 208, 211, 902 P.2d 351, 354 (App.1995). We will not disturb the superior court's factual findings unless they are clearly erroneous. *Id.*

¶ 27 To obtain forfeiture of property based on drug-related racketeering, the State must show probable cause to believe the property is a proceed of or facilitated a drug sale based on all the evidence at the time of the forfeiture hearing. *In re $24,000 in U.S. Currency*, 217 Ariz. 199, 200, ¶¶ 9–10, 171 P.3d 1240, 1243 (App.2007). To meet that burden, the State must show reasonable grounds for its belief "supported by more than a mere suspicion, but less than prima facie proof." *Id.* at ¶ 11 (citation and internal quotation marks deleted). This requires some credible evidence supporting the allegation. *Id.* at ¶ 13 (citation and internal quotation marks omitted). Notwithstanding Appellants' claims, the State was not also required to prove in this in rem proceeding that Appellants engaged in wrongdoing or that White had been convicted of a racketeering offense.

¶ 28 White's statements during the search indicated that he had purchased the Vehicles but had no property in his name "to keep 'you guys outta my business.'" Affidavits from two police detectives further supported probable cause to believe that the Racketeering Defendants engaged in such racketeering conduct as the sale of prohibited drugs and money laundering under A.R.S. § 13–2301(D)(4)(b)(xi), (xxvi), and the Vehicles were forfeitable because they had been acquired and maintained with racketeering proceeds under A.R.S. § 13–2314(G)(1) and/or as substitute assets for assets which are subject to, but no longer available for, forfeiture under A.R.S. § 13–4313(A).

¶ 29 One detective's affidavit recounts the evidence that White had not reported wage income in Arizona or California between 1998 and 2005. Kellie Anthony likewise had re-

ported no income in 2003, and then earned $14,683 in 2004 and $39,742.01 in 2005.

¶ 30 White claimed to earn money from investments with Primex Technology, and Kellie Anthony claimed earnings of $681,797.50 in real estate transactions. As the detective's affidavit points out, the Racketeering Defendants' assets, expenditures, and expenses exceeded their documented income by more than one hundred thousand dollars.

¶ 31 Another detective supplied an affidavit focusing on the Vehicles' relationship to the case. We review the evidence for each vehicle.

### 1.  2000 Jaguar–S Type

¶ 32 According to one detective, police had stopped this vehicle in Inglewood, California during 2002 when it was driven by then-narcotics fugitive Trent Woodmore. At that time, the vehicle was registered to Sabrina Anthony. Sabrina Anthony told police that White, her brother-in-law, had asked to have the vehicle registered in her name, but that she was not the owner and had never driven it. Trent Woodmore told police that White had loaned him the car while Woodmore was on the run.

¶ 33 The record also indicates that Sabrina Anthony contacted White after the interview, and California Department of Motor Vehicles records reflect that she subsequently transferred the Jaguar to Glass, who had served a five-year sentence for possession of marijuana for sale. Meanwhile, a check of records maintained by an auto dealer for 2003 lists the Jaguar's owners as Kellie Anthony and "Mark Smith," an alias used by White. In responding to the State's interrogatories, however, Glass states that he has been the sole title holder since the vehicle's purchase and pays for the repairs, although he could not say where he purchased the vehicle or from whom.

### 2.  2001 Mercedes Benz S600

¶ 34 This car is registered to Edwards, who claims that he stores it with the Racketeering Defendants. Edwards also has stated that he rebuilt the vehicle as a salvage car intending for White to sell it, but no salvage license is of record. Edwards claims to insure the vehicle, but supplied no proof of a policy.

¶ 35 Although Edwards told the State that no work had been done on the car, 2004 records from an auto dealer indicate that the Racketeering Defendants had brought the Mercedes in for thousands of dollars in repairs and maintenance. They both represented that they were its owners.

### 3.  1996 Chevrolet Impala SS

¶ 36 Saskia Anthony's affidavit states that she chooses to lodge this car with the Racketeering Defendants because she lives in a multi-unit complex. According to Saskia Anthony, she bought the Impala from White, but does not recall what she paid for it or when. Saskia Anthony also stated that she did not know how much she pays for the Impala's registration and insurance.

¶ 37 Saskia Anthony's claim that there were no significant repair issues with the vehicle is belied by service records. White paid $1137 to have the transmission rebuilt in April 2005 and paid for other servicing and welding in 2001 and 2004. Moreover, White drove the Impala to meet with a person at a point when wiretap records indicate the pair were negotiating a narcotics deal.

¶ 38 Appellants Glass and Edwards responded with additional evidence, none of it verified. It included the title document to the Jaguar. Edwards provided an automobile insurance policy purporting to show that he was paying for the Mercedes Benz titled in his name, although the State contends that the vehicle identification numbers did not match and the insurance company was not the one he had previously identified.

¶ 39 Under the totality of the circumstances, the evidence was sufficient for the superior court to find the probability that: (1) the Racketeering Defendants engaged in racketeering conduct, involving the prohibited sale of drugs and money laundering, under A.R.S. § 13–2301(D)(4)(b)(xi), (xxvi); and (2) the Vehicles were forfeitable as having been maintained with the proceeds of racketeering conduct under A.R.S. § 13–

2314(G)(1), and/or as substitute assets for assets subject to forfeiture that are no longer available for forfeiture under A.R.S. § 13–4313(A).[5]

### III. The superior court's decisions to strike Appellants' answer and label their vehicle arrangement a "s ham" did not deprive Appellants of due process.

¶ 40 Appellants also challenge the superior court's decision to strike their answer and refer to their position as a "sham," and to find that Appellants did not own the Vehicles without providing an evidentiary hearing. Appellants contend that the court consequently deprived them of due process.

¶ 41 By prior order, Appellants' counsel received notice that all motions would be considered at the hearing. At that time, the State's motion to strike Appellants' answer and application for the order of forfeiture were pending.

¶ 42 In any proceeding under the forfeiture statutes, each Appellant has the burden to establish, by the preponderance of the evidence, that he or she was the owner or an interest holder *"before other evidence is taken."* A.R.S. § 13–4310(D) (emphasis added). To meet this burden, each Appellant was required to provide sworn facts that support ownership or an interest in the property in the claim and answer. A.R.S. § 13–4311(D)–(G).

¶ 43 Despite multiple opportunities, Appellants provided no specific supporting facts required by A.R.S. § 13–4311(E)(4), (6), (7), including the date when they acquired an

interest in the Vehicles, the transferors, and the circumstances under which they acquired their interests. Only one Appellant even submitted a contemporaneous verification. By the time of the superior court's decision, more than two and one-half years had passed since the Racketeering Defendants had appended Appellants' affidavits to their claim. In light of this record, and the Appellants' failure to meet the burden under A.R.S. § 13–4310(D), the superior court did not abuse its discretion by striking the answers as a "sham," declining to proceed with an evidentiary hearing, and the court did not deprive Appellants of due process in doing so.[6]

### CONCLUSION

¶ 44 For the foregoing reasons, we affirm the superior court's rulings in all respects.

CONCURRING: JOHN C. GEMMILL, Presiding Judge and JON W. THOMPSON, Judge.

5.  Appellants argue that, when the case was transferred from one judge to another, the second judge (who entered the forfeiture order) acted without first reviewing the record. Because Appellants fail to cite record evidence for this contention, we reject it. *See* ARCAP 13(a)(6) (an argument shall contain citations to the parts of the record relied upon); *Prairie State Bank v. I.R.S.*, 155 Ariz. 219, 221 n. 1A, 745 P.2d 966, 968 n. 1A (App.1987) (declining to consider assertions unsupported by record evidence). Furthermore, because Appellants have failed to supply a transcript of that hearing, we assume that the record supports the superior court's actions. *See* ARCAP 11(b)(1) (imposing the burden on the appellant to supply relevant transcripts); *John-*

*son v. Elson*, 192 Ariz. 486, 489, ¶ 11, 967 P.2d 1022, 1025 (App.1998) (presuming that the unproduced transcripts support the superior court's ruling).

6.  Appellants also complain about the denial of leave to amend. A court has the discretion to allow an owner or interest holder to amend a claim to correct technical inadequacies. *In re $70,269.91 in U.S. Currency*, 172 Ariz. 15, 20–21, 833 P.2d 32, 37–38 (App.1991) (citing relevant factors for allowing amendment). Here, repeated failures to comply with the statutory requirements support the court's denial of Appellants' request for leave to amend.