250 P.3d 201

**STATE of Arizona ex rel. Thomas C. HORNE, Arizona Attorney General, Plaintiff/Appellee,**

v.

**Jaime Lopez CAMPOS; Maria Noe Lopez Escobedo, Defendants/Appellants,**

and

**Property More Particularly Described in Appendix One Hereto, Defendants In Rem.**

**No. 1 CA–CV 09–0185.**

Court of Appeals of Arizona, Division 1, Department D.

March 3, 2011.

---

Thomas C. Horne, Arizona Attorney General, By Stephen C. Lepley, Assistant Attorney General, and Barton J. Fears, Assistant Attorney General, Phoenix, Attorneys for Plaintiff/Appellee State of Arizona.

Wolf & Associates, P.C. By David J. Wolf, Esq., Phoenix, Attorneys for Defendants/Appellants.

## OPINION

NORRIS, Judge.

¶ 1 This appeal arises out of a judgment of forfeiture in rem of property claimed by defendant/appellant Jaime Lopez Campos, which the plaintiff/appellee State of Arizona asserted was linked to various racketeering offenses. In entering the in rem judgment, the superior court accepted the State's argument Campos was not entitled to challenge forfeiture because he had failed to file a timely claim to the property. On appeal, Campos argues he was entitled to contest forfeiture because the State waived its objection to his failure to file a timely claim by "actively litigat[ing]" the case and treating him as a claimant for more than three years. We agree.

¶ 2 Campos also appeals from the superior court's alternative ruling granting in rem forfeiture of the property on partial summary judgment, asserting the existence of triable issues of material fact. We agree, but only in part as the State demonstrated the absence of a genuine issue of material fact for the forfeiture of certain, but not all, of the property. We therefore reverse in part and affirm in part the court's entry of partial summary judgment and remand for further proceedings consistent with this opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

¶ 3 Campos owned, as his sole and separate property, Noe Auto Sales. Campos's wife, Maria Noe Lopez Escobedo, owned Lopez M. Auto Sales as her sole and separate property.

¶ 4 On February 10, 2004, confidential informants acting at the direction of law enforcement paid $11,600 in cash to Noe Auto Sales for two Ford Explorers ("February 2004 sale"). The confidential informants told a Noe salesman the vehicles would be used to "smuggle illegal aliens." On August 18, 2004, a grand jury indicted Campos for conspiracy, illegally conducting an enterprise, fraudulent schemes and artifices, fraudulent schemes and practices, forgery, and money laundering.

¶ 5 Subsequently, on September 16, 2004, the superior court issued a seizure warrant authorizing the State to seize Campos's and Escobedo's assets that were allegedly the proceeds of racketeering offenses. The State seized the assets of Noe Auto Sales and Lopez M. Auto Sales. The seized assets included 79 vehicles, tools, money, office equipment, and other personal and real property.

¶ 6 On November 15, 2004, the State initiated this action by filing a Notice of Pending Forfeiture and Notice of Seizure for Forfeiture ("Notice"). The Notice identified the

property the State had seized for forfeiture and advised all parties who claimed an interest in the property that Arizona Revised Statutes ("A.R.S.") section 13–4311(D) (2010)[1] required them to submit a claim within 30 days. Escobedo timely submitted a claim in which she identified the specific seized property she claimed to own and avowed she had not committed any illegal acts and had no knowledge of wrongdoing.

¶ 7 Campos did not file a claim. However, before the 30–day deadline for filing a claim expired, he moved to stay discovery as to him until the criminal charges against him were resolved. The State opposed the motion, arguing Campos had not shown his criminal case would be substantially prejudiced by proceeding with the civil forfeiture action. Campos and the State stipulated, and the court ordered, the State would not be required to file its complaint until 30 days after the court ruled on the motion to stay.

¶ 8 On June 16, 2005, Campos pleaded guilty to facilitation of money laundering, a class six undesignated offense in violation of A.R.S. §§ 13–1004 (2010), –2317 (2010). The conviction stemmed from Noe Auto Sales's failure to file a Form 8300[2] after receiving more than $10,000 in cash in the February 2004 sale. The superior court sentenced Campos to one year of probation and later designated the offense a misdemeanor.

¶ 9 At the State's request, the superior court repeatedly extended the forfeiture action on the inactive calendar until September 2006 when the State filed a verified complaint. Campos and Escobedo denied the material allegations of the complaint in an unverified answer.

¶ 10 More than one year later, after the parties had engaged in substantial discovery, see infra ¶ 24, Campos and Escobedo moved for summary judgment. In response, the

State argued Escobedo, as the only person who had filed a claim under A.R.S. § 13–4311(D), was the sole claimant in the action and because she had only claimed some of the property, it was entitled to forfeiture in rem of the rest of the seized property (the "Noe Property"). The State also argued Campos's conviction for money laundering precluded the court from granting Campos's motion for summary judgment as a matter of law.

¶ 11 The State then applied for an order of forfeiture in rem of the Noe Property, asserting neither Campos, nor anyone else, had filed a timely claim to it pursuant to A.R.S. § 13–4311. As an alternative ground for forfeiture, it also moved for partial summary judgment based on Campos's conviction for facilitation of money laundering.

¶ 12 Over Campos's objection, the superior court granted the State's application for an order of forfeiture in rem[3] as well as its motion for partial summary judgment; the court also denied Campos and Escobedo's motion for summary judgment. The court certified the order of forfeiture in rem for immediate appeal under Arizona Rule of Civil Procedure ("Rule") 54(b). Campos then moved to set aside the order of forfeiture under Rule 60(c)(1), arguing his failure to file a claim was the result of excusable neglect. The superior court denied the motion and subsequently entered a final, appealable order granting the State's motion for partial summary judgment. Campos appealed. We have jurisdiction pursuant to A.R.S. § 12–2101(B)–(C) (2003).

## DISCUSSION

### I. Order of Forfeiture in Rem

 ¶ 13 Campos asserts the superior court should not have granted the State's

---

1. Although the Arizona Legislature amended certain statutes relevant to this case after the February 2004 sale, the revisions are immaterial. Thus, we cite to the current version of these statutes.

2. At the change-of-plea hearing in his criminal case, Campos's attorney stated Campos was "pleading guilty to facilitation of the failure to transmit required IRS reporting documents

Form 8300 as is referred to under the IRS code and required to be filed also under Arizona Revised Statute Chapter 6 Section 1241."

3. The order of forfeiture in rem included all assets at three different Noe Auto Sales locations; a parcel of real property; property or cash up to $12,800; a bank account containing $48,123.81 and its proceeds; and 77 vehicles.

application for forfeiture in rem because the State waived his failure to file a claim by "actively litigat[ing]" the action. In making this argument, Campos argues the circumstances in this case are analogous to those in *Jones v. Cochise County*, 218 Ariz. 372, 187 P.3d 97 (App.2008). There, we held the defendant county waived any alleged deficiency in the plaintiff's statutory notice of claim by participating in litigation for six months without raising the purported defect.[4] *Id.* at 374, ¶ 5, 381, ¶ 29, 187 P.3d at 99, 106. Campos contends that by treating him as a claimant, engaging in extensive discovery, and not challenging his "standing" to contest the forfeiture for more than three years, the State waived, by conduct, his failure to file a claim.[5] We agree; because the facts relating to waiver are uncontested and "waiver by conduct is apparent from the extensive litigation record," we hold, as a matter of law, the State waived, by its conduct, its right to challenge Campos's failure to file a claim. *City of Phx. v. Fields*, 219 Ariz. 568, 575, ¶ 32, 201 P.3d 529, 536 (2009); *see also Jones*, 218 Ariz. at 381, ¶ 29, 187 P.3d at 106 (waiver by conduct as a matter of law on undisputed facts).

¶ 14 To contest a civil forfeiture action, one must allege an interest in the property by filing a claim in the forfeiture action. A.R.S. § 13–4311(D); *In re $70,269.91 in U.S. Currency*, 172 Ariz. 15, 19, 833 P.2d 32, 36 (App. 1991). The claimant must file the claim within 30 days after the State files its notice of forfeiture, and the claim must contain specific information prescribed by statute. A.R.S. § 13–4311(D)–(E).

¶ 15 Campos argues he has "standing" despite his failure to file a claim as the statute requires because the circumstances in this case are analogous to those in *Jones*. In *Jones*, the county exchanged disclosure statements and other written discovery and participated in seven depositions without raising the allegedly dispositive defect in the plaintiff's notice under A.R.S. § 12–821.01 (2003), a statute that requires a party with a claim against a public entity or employee to notify the public entity or employee of the claim and state an "amount for which the claim can be settled" within 180 days after the cause of action accrues. 218 Ariz. at 380, ¶ 27, 187 P.3d at 105. We held the county waived the alleged defect. *Id.* at 381, ¶ 29, 187 P.3d at 106. "[W]aiver may be found when a governmental entity has taken substantial action to litigate the merits of the claim that would not have been necessary had the entity promptly raised the defense." *Id.* at 380, ¶ 26, 187 P.3d at 105.

4. On appeal, Campos also argues (1) he effectively filed a claim under A.R.S. § 13–4311(D) by moving for a stay and (2) the superior court should have allowed him to amend his motion to stay to comply with that statute. Because we hold the State waived its objection to Campos's failure to file a claim under A.R.S. § 13–4311, we need not address these arguments.

5. Campos first raised waiver in his request that the superior court reconsider its order granting the State's application for forfeiture in rem, which the court denied without ordering the State to respond. *See* Ariz. R. Civ. P. 7.1(e). Generally, we do not consider arguments raised for the first time in a motion for reconsideration because the prevailing party in the superior court often is deprived of a fair opportunity to respond. *Evans Withycombe, Inc. v. W. Innovations, Inc.*, 215 Ariz. 237, 240, ¶ 15, 159 P.3d 547, 550 (App.2006). Nevertheless, we do have discretion to consider matters not properly raised in the superior court, *City of Tempe v. Fleming*, 168 Ariz. 454, 456, 815 P.2d 1, 3 (App.1991), and we have exercised this discretion when, as here, the facts are fully developed, undisputed, and the issue can be resolved as a matter of law. *Town of S. Tucson v. Bd. of Supervisors of Pima Cnty.*, 52 Ariz. 575, 583, 84 P.2d 581, 584 (1938) (appellate courts have discretion to consider questions not raised on appeal, especially "when the question raised for the first time is one of substantive law which is not affected by any dispute as to the facts of the case"); *see Barrio v. San Manuel Div. Hosp. for Magma Copper Co.*, 143 Ariz. 101, 104, 692 P.2d 280, 283 (1984) (argument first raised on appeal considered, in part, because issue did not "turn[ ] upon disputed evidence"). We also have discretion to consider an issue not raised in the superior court if "the question is one of statewide public importance," *Aldrich & Steinberger v. Martin*, 172 Ariz. 445, 447, 837 P.2d 1180, 1182 (App.1992), which we deem this waiver issue to be. Additionally, the State had the opportunity to respond to this argument after Campos asserted it in his opening appellate brief. The State did not address the argument on the merits, asserting it was moot because Campos had received an opportunity to defend against forfeiture by opposing the State's partial summary judgment motion. Under these circumstances, we see no unfairness in considering Campos's waiver argument.

¶ 16 The Arizona Supreme Court cited *Jones* approvingly in *City of Phoenix v. Fields,* 219 Ariz. 568, 574–75, ¶¶ 29–30 & 33, 201 P.3d 529, 535–36 (2009) (defendant city's active litigation waived its right to seek dismissal due to plaintiff's failure to abide by A.R.S. § 12–821.01). In *Fields,* the court pointed to arbitration as a useful analogy regarding waiver: "It is widely recognized that even when a dispute is subject to arbitration, that right may be waived by a party who participates substantially in litigation without promptly seeking an order from the court compelling arbitration." 219 Ariz. at 575 n.4, ¶ 30, 201 P.3d at 536 n.4.

¶ 17 Both *Jones* and *Fields* cited *Pritchard v. State,* which, while based on A.R.S. § 12–821,[6] an earlier version of the current A.R.S. § 12–821.01, held compliance with the statute was a procedural, not jurisdictional, prerequisite to bringing suit and thus subject to waiver, estoppel, and equitable tolling. 163 Ariz. 427, 430, 432, 788 P.2d 1178, 1181, 1183 (1990); *see Lee v. State,* 225 Ariz. 576, 579, ¶¶ 10, 13, 242 P.3d 175, 178 (App.2010) (logic of Pritchard applies "equally to the current version of the statute"; jury question as to whether claimant complied with statute).

¶ 18 Arizona courts have also recognized that waiver can apply to more than just procedural requirements. For example, by failing to timely object, the State can waive an adverse party's lack of standing. *State v. Hazlett,* 205 Ariz. 523, 525–26, ¶ 5, 73 P.3d 1258, 1260–61 (App.2003) (standing is not a jurisdictional doctrine under Arizona law; State's failure to raise standing in trial court constituted waiver of the issue); *cf. State v. B Bar Enters.,* 133 Ariz. 99, 101 n.2, 649 P.2d 978, 980 n.2 (1982) (standing is not a constitutional jurisdictional requirement and Arizona courts may consider questions despite lack of standing); *see also Azabdaftari v. Mayer,* 734 F.Supp.2d 51, 53 n.3 (D.D.C.2010) (federal civil forfeiture statute does not explicitly state its exhaustion requirements are jurisdictional so they are treated as non-jurisdictional (citing *Arbaugh v. Y & H Corp.,* 546 U.S. 500, 516, 126 S.Ct. 1235, 1245, 163 L.Ed.2d 1097 (2006))).

¶ 19 In addition to the notice-of-claim statute, arbitration, and standing case law, cases in other analogous areas of law point to waiver as the proper result here. In *Medina v. Arizona Department of Transportation,* we held the Arizona Department of Transportation ("ADOT") waived its defense of the defendant's failure to exhaust administrative remedies by failing to timely raise the issue. 185 Ariz. 414, 419, 916 P.2d 1130, 1135 (App. 1995). "Once Medina sought judicial review of his license suspension, his alleged failure to exhaust administrative remedies became a timely and possibly viable procedural defense. However, ADOT delayed raising this issue until after the court reached its decision and thus waived it." *Id.* Similarly, state officials can waive the defense of qualified immunity if they do not timely raise it. *Flanders v. Maricopa Cnty.,* 203 Ariz. 368, 378, ¶ 65, 54 P.3d 837, 847 (App.2002).

¶ 20 Although the federal forfeiture statute differs from Arizona's, nevertheless, in determining whether to extend the deadline for filing a claim, a district court can properly consider the federal government's delay in objecting to a forfeiture claimant's failure to file a claim. *United States v. 1982 Yukon Delta Houseboat,* 774 F.2d 1432, 1435–36 (9th Cir.1985). In *Houseboat,* the Ninth Circuit explained the government is not required to defend against claimants who fail to file timely claims, but the government must move for forfeiture of the property for procedural defects at the start of the case, not after extensive litigation. *Id.* at 1436.

¶ 21 Although the authorities discussed above arise in different contexts, they stand for a very simple point: As a general matter, any litigant, even the State, can waive by conduct its right to object to an adverse party's failure to comply with statutory, constitutional, contractual, and procedural requirements. *See* analysis of *Jones, Fields, Medina,* and *Flanders* in ¶¶ 15–16 & 19; *see also In re Estate of Cortez,* 226 Ariz. 207, ¶ 4, 245 P.3d 892 (App.2010) (waiver of a contract right can be intentional or by conduct); *Uyleman v. D.S. Rentco,* 194 Ariz.

6. The version of A.R.S. § 12–821 discussed in *Pritchard* became law in 1984, 1984 Ariz. Sess. Laws, ch. 285, § 5, and was repealed nine years later. 1993 Ariz. Sess. Laws, ch. 90, § 7.

300, 302, ¶ 10, 981 P.2d 1081, 1083 (App.1999) ("The statute of limitations is an affirmative defense that is waived unless raised."); *Herstam v. Deloitte & Touche, LLP*, 186 Ariz. 110, 116, 919 P.2d 1381, 1387 (App.1996) (statutes enacted to protect individuals may nonetheless be waived by those individuals); *McClellan Mortg. Co. v. Storey*, 146 Ariz. 185, 188, 704 P.2d 826, 829 (App.1985) ("It is well settled that most rights may be waived."); *Frei v. Hamilton*, 123 Ariz. 544, 546, 601 P.2d 307, 309 (App.1979) (generally, when a non-breaching party to a contract allows a breaching party to perform, the non-breaching party waives the breach); *State v. Munoz*, 104 Conn.App. 85, 93, 932 A.2d 443, 449 (2007) ("[A] party may relinquish its right to demand strict adherence to a mandatory statutory provision by virtue of its own failure to enforce that right." (quoting *Santiago v. State*, 261 Conn. 533, 543, 804 A.2d 801, 809 (2002))); *cf. Valencia Energy Co. v. Ariz. Dep't of Revenue*, 191 Ariz. 565, 576, ¶¶ 34–35, 959 P.2d 1256, 1267 (1998) (equitable estoppel operates against State in tax matters if State commits affirmative acts relied upon by taxpayer and subsequently takes an inconsistent position). Applying waiver by conduct against the State is especially fitting when requiring the State to bear the consequences of its inaction will not substantially and adversely affect the exercise of governmental power—the State's waiver here, as we discuss below, only means it must litigate the merits of its in rem forfeiture claim—and when exempting the State from these consequences would allow it to forfeit property without having to show a link between much of the property seized and any act of racketeering, a situation presented here, as we also discuss below.

¶ 22 We acknowledge that A.R.S. § 13–4311(F) prohibits a court from granting an extension of the claim deadline. *State ex rel. Goddard v. Ochoa*, 224 Ariz. 214, 217, ¶ 9, 228 P.3d 950, 953 (App.2010). The legislature's prohibition on court-ordered extensions does not, however, mean the State cannot waive, by its own conduct, its right to object to a party's failure to submit a claim within the 30–day deadline.

¶ 23 Consistent with the authorities discussed above, we hold the State may waive, through its conduct, its right to challenge a party's failure to file a claim within the 30–day deadline established by A.R.S. § 13–4311(D). As in every case involving waiver by conduct, whether the State's conduct constitutes a waiver will depend on the facts and circumstances. *See Jones*, 218 Ariz. at 380, ¶ 27, 187 P.3d at 105 (analyzing extent and type of government's discovery activity prior to assertion of defense of plaintiff's failure to file a notice of claim). Although normally waiver presents a question of fact, *id.* at ¶ 28, in this case the "extensive litigation record" demonstrates the State's waiver as a matter of law. *See Fields*, 219 Ariz. at 575, ¶ 32, 201 P.3d at 536.

¶ 24 Here, the undisputed facts demonstrate, as a matter of law, the State waived its right to challenge Campos's failure to file a claim within the statutory deadline. The State treated Campos as a claimant and did not challenge his standing to contest the forfeiture for more than three years after it filed the notice of forfeiture. It served him with the notice of forfeiture and even alleged in its complaint that he had timely filed a claim pursuant to A.R.S. § 13–4311. The parties participated in discovery for over 17 months, with 13 depositions; indeed, the State deposed Campos and two other employees of Noe Auto Sales. The State and Campos stipulated to extended discovery deadlines, drafted a joint pretrial memorandum, and attempted to set a settlement conference-all actions that demonstrate the State treated Campos as a proper claimant. Accordingly, by engaging in "conduct ... inconsistent with an intention to assert" Campos's failure to file a claim, the State waived its right to object to Campos's standing to challenge the forfeiture of the Noe Property. *See Jones*, 218 Ariz. at 380, ¶ 27, 187 P.3d at 105. Although it waived its right to object to Campos's failure to file a claim, on remand, the State is still entitled to seek forfeiture of the property in rem.

¶ 25 We therefore reverse the superior court's order of forfeiture in rem.

## II. Partial Summary Judgment[7]

¶ 26 Campos argues the State was not entitled to partial summary judgment because genuine issues of material fact existed regarding the requirements for racketeering under A.R.S. § 13–2301(D)(4) (2010). Thus, he asserts the State was not entitled to forfeiture of the Noe Property as a matter of law. As we explain below, we agree in part and disagree in part.

### A. General Principles

■ ¶ 27 Under Arizona's forfeiture statutes, A.R.S. §§ 13–4301 to –4315 (2010), "property is subject to forfeiture if some other statute provides for such a remedy." *In re U.S. Currency in the Amount of $315,900.00*, 183 Ariz. 208, 210, 902 P.2d 351, 353 (App.1995). Here, the State based its forfeiture application on racketeering allegations.[8] A.R.S. § 13–2301(D)(4). Racketeering requires (1) an act (2) "that would be punishable by imprisonment for more than one year under the laws of this state ... regardless of whether the act is charged or indicted," (3) "involv[ing]" any one of a number of enumerated offenses (4) "committed for financial gain."[9] A.R.S. § 13–2301(D)(4).

■ ¶ 28 Not all property belonging to a person who has committed racketeering is subject to forfeiture, however. As we have recognized, there must be "a link between the property to be forfeited and the alleged racketeering conduct." *In re $24,000 in U.S. Currency*, 217 Ariz. 199, 201, ¶ 7, 171 P.3d 1240, 1242 (App.2007). Under A.R.S. § 13–2314(G)(3) (2010), "proceeds traceable to" the racketeering or property "used or intended to be used in any manner or part to facilitate the commission of" racketeering is subject to forfeiture. The State must show by a preponderance of the evidence that property is subject to forfeiture. A.R.S. § 13–4311(M).

¶ 29 A defendant "convicted in any criminal proceeding" is prohibited from denying the "essential allegations of the criminal offense of which he was convicted" in any civil proceeding, such as a subsequent in rem forfeiture action. A.R.S. § 13–2314(H). Thus, if the elements of the offense for which a claimant was convicted also meet the elements of racketeering, the "statutory estoppel" of A.R.S. § 13–2314(H) prevents the claimant from denying he committed racketeering and the State would only need to prove a link between the racketeering and the property to obtain forfeiture.

### B. Racketeering in the February 2004 Sale

¶ 30 On appeal, Campos argues the State failed to prove, for purposes of partial summary judgment, certain racketeering elements in connection with the February 2004 sale. He also argues the State failed to demonstrate a link between the property it

---

7. We review de novo the superior court's entry of partial summary judgment for the State and view the evidence in the light most favorable to Campos. *See Brookover v. Roberts Enters.*, 215 Ariz. 52, 55, ¶ 8, 156 P.3d 1157, 1160 (App.2007). To obtain summary judgment, "the moving party must come forward with evidence it believes demonstrates the absence of a genuine issue of material fact and must explain why summary judgment should be entered in its favor." *Nat'l Bank of Ariz. v. Thruston*, 218 Ariz. 112, 115, ¶ 14, 180 P.3d 977, 980 (App.2008).

8. Section 13–2301(D)(4), as relevant, is as follows:

"Racketeering" means any act, including any preparatory or completed offense, that is chargeable or indictable under the laws of the state or country in which the act occurred and, if the act occurred in a state or country other than this state, that would be chargeable or indictable under the laws of this state if the act had occurred in this state, and that would be

punishable by imprisonment for more than one year under the laws of this state and, if the act occurred in a state or country other than this state, under the laws of the state or country in which the act occurred, regardless of whether the act is charged or indicted, and the act involves either:
(a) Terrorism, animal terrorism or ecological terrorism that results or is intended to result in a risk of serious physical injury or death.
(b) Any of the following acts if committed for financial gain:
 . . . .
(iv) Forgery.
 . . . .
(xx) A scheme or artifice to defraud.
 . . . .
(xxvi) Money laundering.

9. Racketeering under A.R.S. § 13–2301(D)(4)(a) does not include a "financial gain" element, but the acts included in that subsection are not at issue here and need not be considered.

sought to forfeit and the racketeering conduct involved in the February 2004 sale.[10] We disagree with both arguments.

### 1. More Than One Year

¶ 31 Campos argues the State, relying solely on statutory estoppel from his conviction for facilitation of money laundering, cannot prove he committed racketeering because facilitation of money laundering is not punishable by more than one year in prison. Campos argues (1) the actual sentence he received controls and (2) the presumptive sentence applicable to the offense governs whether an offense would be punishable by imprisonment for more than one year. We disagree with both arguments.[11]

¶ 32 In support of his first argument, Campos points to cases involving impeachment with prior convictions under Arizona Rule of Evidence 609[12] as proof a court should consider the punishment a defendant actually received, rather than the maximum possible punishment for the offense. Rule 609 is premised on "the law under which the witness was convicted," whereas A.R.S. § 13–2301(D)(4) is premised on the act committed and the sentence to which this act "would be punishable ... regardless of whether the act is charged or indicted." This difference in language shifts the focus in the racketeering context from the sentence received by the defendant to the act itself.[13]

¶ 33 Courts interpreting federal racketeering law, upon which Arizona patterned its racketeering laws, see State v. Ivanhoe, 165

10. Campos does not dispute, nor could he, that he committed an act (the first element of racketeering) and that this act "involve[d]" the enumerated offense of money laundering (the third element of racketeering). Campos committed an "act" because he was convicted of the criminal offense of facilitation of money laundering in connection with the February 2004 sale. See A.R.S. § 13–201 (2010) (criminal liability requires "a voluntary act" or the omission of a duty a person could have performed). And, in connection with the February 2004 sale, he also committed an act that "involve[d]" the enumerated offense of money laundering. See A.R.S. § 13–2301(D)(4)(b)(xxxvi); State v. Korovkin, 202 Ariz. 493, 497, ¶ 15, 47 P.3d 1131, 1135 (App. 2002) (using dictionary definition of "involve"— " 'entangle, [or] implicate' and 'to draw in as a participant' "—to hold driver who raced second driver until second driver collided with another vehicle was "involved" in that accident and guilty of leaving the scene of an accident although the driver never physically collided with another vehicle). Campos's conviction for facilitation of money laundering required an act that created the "means or opportunity" for the offense of money laundering, A.R.S. § 13–1004, thus his act was "entangle[d]" with money laundering, his act "implicate[d]" money laundering, and his act "dr[e]w in as a participant" the person who committed money laundering. Korovkin, 202 Ariz. at 497, ¶ 15, 47 P.3d at 1135.

11. Facilitation of money laundering is a class six felony. A.R.S. §§ 13–1004(C)(2), –2317(E). The presumptive sentence for a class six felony is one year in prison, the maximum is a year and a half, and the aggravated maximum is two years. A.R.S. § 13–702(D) (2010).

12. Arizona Rule of Evidence 609(a) states in relevant part: "For the purpose of attacking the credibility of a witness, evidence that the witness

has been convicted of a crime shall be admitted ... if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted...."

13. Campos also cites In re Beren, 178 Ariz. 400, 874 P.2d 320 (1994), and Lafarga v. INS, 170 F.3d 1213 (9th Cir.1999), in support of his interpretation of the "more than one year" requirement. Both cases, however, are distinguishable because, like the impeachment cases, they involve statutory language different from the language in A.R.S. § 13–2301(D)(4). In Beren, our supreme court declined to discipline an attorney who had committed a class six undesignated offense and had been sentenced to probation. 178 Ariz. at 403, 874 P.2d at 323. The disciplinary rules at that time allowed discipline if a lawyer committed "any felony" or a misdemeanor "involving a serious crime." Id. at 402, 874 P.2d at 322. The court held that because the attorney had been convicted for a misdemeanor—and not for a serious crime—by the time disciplinary proceedings occurred, the attorney had not committed a felony and was not subject to discipline. Id. This case turned on whether the crime was a felony; it did not turn on any possible punishment that could have been received.

In Lafarga, the Ninth Circuit interpreted the petty offense exception under federal immigration law that applied if "the maximum penalty possible for the crime of which the alien was convicted ... did not exceed imprisonment for one year and ... the alien was not sentenced to a term of imprisonment in excess of 6 months." 170 F.3d at 1215 (quoting 8 U.S.C. § 1182(a)(2)(A)(ii)(II) (2006)). Once again, the statutory language focused on the sentence the defendant actually received—not on the possible sentence the act could receive.

Ariz. 272, 273, 798 P.2d 410, 411 (App.1990), have reached similar results. *See United States v. Barbeito*, No. 2:09–cr–00222, 2010 WL 2243878, at *6 n.5 (S.D.W.Va. June 3, 2010) ("The phrase 'punishable by imprisonment for more than one year' . . . indicates that a proper state-law RICO predicate must be what traditionally is classified as [a] felony. That is, it must carry a maximum statutory punishment of more than one year in prison." (citation omitted)); *United States v. Wai Ho Tsang*, 632 F.Supp. 1336, 1337–38 (S.D.N.Y.1986) (as a juvenile, defendant could not be imprisoned under state law but federal court still found racketeering because court looked to state law only to decide whether offense was punishable by more than one year in prison, "not whether this particular defendant may be punished for the conduct"); *cf. United States v. Hill*, 539 F.3d 1213, 1221 (10th Cir.2008) (federal felon-in-possession-of-a-firearm statute uses phrase "a crime punishable by imprisonment for a term exceeding one year"; offender's actual sentence irrelevant because statute "demands that courts focus on the maximum statutory penalty for the offense"). This federal case law buttresses our view that the legislature's intent in A.R.S. § 13–2301(D)(4) was for courts to consider the actual available punishments for the act committed—not the punishment actually received—when applying the "punishable by imprisonment for more than one year" language of A.R.S. § 13–2301(D)(4).

¶ 34 Campos also argues courts should treat the presumptive sentence for an offense as the statutory maximum under A.R.S. § 13–2301(D)(4). This argument does not comport with the statutory language of § 13–2301(D)(4) as discussed above, and the cases Campos cites, as discussed below, are inapposite.

¶ 35 Campos's reliance on Arizona cases applying *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), is misplaced. He argues that without proof of aggravating factors, the statutory maxi-mum sentence is the presumptive sentence under *State v. Anderson*, 211 Ariz. 59, 60, ¶ 2, 116 P.3d 1219, 1220 (2005). Although *Anderson* requires a jury to find certain facts that increase a sentence beyond the presumptive sentence—in accordance with *Apprendi*—this argument continues to focus on the sentence Campos actually received rather than the act he committed. Whether Campos could have received a sentence more severe than the presumptive does not have any impact upon the maximum sentence that "would be punishable" for an offense.

¶ 36 Campos cites *In re Commodore 128 Personal Computer with Accessories*, 166 Ariz. 567, 804 P.2d 100 (App.1990), to argue the statutory maximum term is the presumptive, but that is not the holding of the case or even a proper inference from it. In *Commodore*, we held the property should not be forfeited because the State had failed to present sufficient evidence to show the defendant committed an act that would have been punishable by more than a year in prison. 166 Ariz. at 569, 804 P.2d at 102. We did not hold courts should treat the presumptive sentence as the statutory maximum, and no other case Campos cites stands for that proposition.

¶ 37 Campos also cites *In re Nissan Sentra*, 201 Ariz. 114, 117, ¶ 9, 32 P.3d 39, 42 (App.2001), but this case does not support his argument either. In *Nissan Sentra*, we held the State presented sufficient evidence of racketeering because the record contained "ample evidence" to prove the defendant committed a class two felony, even though the defendant was convicted only of a class six felony. 201 Ariz. at 117, ¶ 9, 32 P.3d at 42. Use of the class-two-felony act rather than the class-six-felony act did not prove class six felonies are not punishable by more than one year in prison. Rather, the record demonstrated a readily available basis to prove racketeering, even though the record also may have provided sufficient evidence to base forfeiture upon the class-six-felony act.[14]

14. Campos argues the rule of lenity requires us to construe the presumptive sentence as the maximum, but the rule of lenity "applies only where a statute is susceptible to more than one interpretation," *State v. Dean*, 226 Ariz. 47, 54 n.6, ¶ 21, 243 P.3d 1029, 1036 n.6 (App.2010) (citation omitted), and we see no ambiguity here.

Campos also argues the State conceded at oral argument that his class-six-felony conviction, by itself, was not sufficient for forfeiture, but the

¶ 38 Here, we focus on the act committed by Campos—not on the punishment he actually received—and hold he committed an act that "would be punishable by imprisonment for more than one year." A.R.S. § 13–2301(D)(4). Facilitation of money laundering is a class six felony punishable by a maximum of one and a half years in prison and an aggravated term of two years in prison. A.R.S. §§ 13–702(D), –1004(C)(2), –2317(E). Because facilitation of money laundering is an act that "would be punishable" by more than one year in prison, Campos's conviction met that element of racketeering.

### 2. Financial Gain

 ¶ 39 Campos next argues the State, relying solely on the statutory estoppel of A.R.S. § 13–2314(H), failed to show he committed an enumerated offense "for financial gain" in the February 2004 sale because acting for financial gain is not an essential element of facilitation of money laundering. We agree financial gain is not an element of facilitation of money laundering; nevertheless, the State presented uncontroverted evidence showing Campos acted for financial gain. See State v. 1810 E. Second Ave., 193 Ariz. 1, 7, 969 P.2d 166, 172 (App.1997) (large number of immature marijuana plants and budget documents were sufficient evidence to show act committed for financial gain).

 ¶ 40 J.F., the Noe Auto Sales employee who sold the vehicles in the February 2004 sale, testified in deposition that at the request of the confidential informants, he placed "false liens," see infra ¶ 45, on the vehicles even though they had paid cash for the vehicles. J.F. testified Campos was aware J.F. put false liens on the vehicles and the two of them talked about it later. J.F. testified a Form 8300 was never filed, despite the sale exceeding $10,000. Campos admitted he knew this form needed to be filed and that it was his responsibility to ensure it was filed. One of the confidential informants testified in deposition that some time after the sale he returned to Noe Auto Sales, told J.F. one of the vehicles had been "seized" by law enforcement, paid J.F. $1200 to retrieve the vehicle from impoundment using the false

lien, and then picked up the car at Noe Auto Sales a few days later.

¶ 41 These facts, which were uncontroverted, are sufficient to show that in the February 2004 sale Campos committed an act involving an enumerated offense—money laundering—for financial gain because even if the financial gain did not flow personally to him, the overall transaction involved financial gain. See Nissan Sentra, 201 Ariz. at 117–18, ¶¶ 10–11, 32 P.3d at 42–43 (defendant who smuggled marijuana into prison to give to inmate committed racketeering because racketeering enterprise had financial objective even though defendant received no personal financial gain). The confidential informants—had they really been smugglers—would have received financial gain not only from using the vehicles for smuggling but also because the false liens would have allowed—and actually did allow—Noe Auto Sales to recover one of the vehicles and save the "smugglers" from having to purchase another vehicle. Additionally, J.F. received financial gain when he received the $1200 to recover the vehicle. Under Nissan Sentra, these financial gains, although possibly not personal to Campos, were nonetheless sufficient to show a financial objective and thus sufficient to show Campos committed an act involving an enumerated offense committed for financial gain.

### 3. Statutory Link to Property Forfeited

¶ 42 Because the State showed the absence of a genuine issue of material fact as to Campos's commission of racketeering in connection with the February 2004 sale, the State was entitled to forfeiture of "[a]ll proceeds traceable" to and any "other property used ... to facilitate" that racketeering. A.R.S. § 13–2314(G)(3). The State demonstrated this link by offering uncontroverted evidence that $11,600 plus $1200—for a total of $12,800—in proceeds was traceable to that racketeering. Thus, the State was entitled to the forfeiture of this money. We therefore affirm in part the superior court's entry of partial summary judgment.

State asserted a class six felony was sufficient,

regardless of the defendant's actual sentence.

### C. All Other Alleged Acts of Racketeering

¶ 43 Although the State was entitled to forfeiture of the property described above, we agree with Campos that disputed issues of material fact existed that precluded the State from obtaining forfeiture of the rest of the Noe Property on summary judgment. Because of inconsistencies and conflicts in the evidence, the State failed to demonstrate (with the exception of money laundering involving the February 2004 sale, as discussed above), as a matter of law, Campos had committed an act involving an enumerated offense—and thus racketeering—which entitled the State to the in rem forfeiture of the rest of the Noe Property (the "remainder property"). Therefore, we reverse in part the superior court's grant of partial summary judgment.

¶ 44 To understand the inconsistencies in the evidence, we first chronicle the evolving basis of the State's motion for partial summary judgment. In its motion, the State argued Campos had committed racketeering solely on the basis of statutory estoppel and his conviction for facilitation of money laundering; in response, Campos focused on the State's statutory-estoppel argument. In its reply supporting its partial summary judgment motion ("reply"), the State, however, not only reiterated its statutory-estoppel argument but also expanded[15] Campos's alleged racketeering to include another enumerated offense: a scheme or artifice to defraud. A.R.S. § 13–2301(D)(4)(b)(xx). Specifically, the State asserted Campos committed fraudulent schemes and practices under A.R.S. § 13–2311 (2010),[16] which it linked to the "Collazo Organization," an illegal-

alien-smuggling ring that it alleged obtained vehicles from Noe Auto Sales.

¶ 45 In support of this linkage, the State relied on a July 2008 affidavit by an Immigration and Customs Enforcement agent, R.M. He explained the Collazo Organization purchased vehicles from used car dealers, such as Noe Auto Sales, to "transport illegal aliens and narcotics from Mexico to the Phoenix Metro Area." According to R.M., if law enforcement seized and impounded vehicles, the Collazo Organization had two methods for retrieving them. Under the first method, the Collazo Organization purchased a vehicle from a dealership in cash but had the dealership place a lien on the vehicle in the dealership's favor ("false lien"). After seizure and impoundment, the dealership used this false lien to reclaim possession and then returned the vehicle to the Collazo Organization for continued use. Under the second method, after seizure, the Collazo Organization signed the vehicle's title over to a straw person and then had the dealership notarize the title transfer. The straw person then used the transferred title to obtain a new title, used this new title to reclaim possession, and then immediately transferred the vehicle's title back to the Collazo Organization for continued use.

¶ 46 At oral argument on the motion, the State's attorney expanded the breadth of the motion once again to include the enumerated offenses of forgery, A.R.S. § 13–2301(D)(4)(b)(iv), and, once again, a scheme or artifice to defraud, but this time under A.R.S. § 13–2310 (2010). See supra note 16. The State's attorney advised the superior court the State's motion and reply contained "no mention of Collazo"—despite the "Colla-

<hr>

**15.** Rule 7.1(a) requires that a reply "be directed only to matters raised in the answering memorandum," and trial courts can deem waived arguments not raised in the original motion. *Mohave Elec. Coop., Inc. v. Byers*, 189 Ariz. 292, 301 n.2, 942 P.2d 451, 460 n.2 (App.1997) (argument not raised until reply memorandum on summary judgment not considered by trial court); *cf. Westin Tucson Hotel Co. v. State of Ariz. Dep't of Revenue*, 188 Ariz. 360, 364, 936 P.2d 183, 187 (App.1997) (arguments raised for first time in trial-court-reply memorandum deemed waived on appeal).

**16.** A violation of this statute—as well as A.R.S. § 13–2310 (2010), which the State, during oral argument, asserted Campos also violated—is an act involving the enumerated offense of "a scheme or artifice to defraud." A.R.S. § 13–2301(D)(4)(b)(xx). Both § 13–2310 and § 13–2311 are different types of a scheme or artifice to defraud. Section 13–2310 can be to the detriment of any victim, whereas § 13–2311 must be to the detriment of a government entity. As a result, violations of both statutes "involve[ ]" the enumerated offense of "a scheme or artifice to defraud." A.R.S. § 13–2301(D)(4); *see Korovkin*, 202 Ariz. at 497, ¶ 15, 47 P.3d at 1135.

zo Organization" being mentioned five different times in the reply—and said the motion "is not based upon any connection to the Collazo enterprise."

¶ 47 Thus, the State's motion became a moving target.[17] Initially premised on Campos's alleged racketeering involving the enumerated offense of money laundering, by oral argument the motion had expanded to include other alleged acts involving other enumerated offenses, which in its reply the State linked to Collazo but which at oral argument the State said were not linked to Collazo. The record reveals numerous genuine issues of material fact as to whether Campos committed acts involving these other enumerated offenses that would entitle the State to forfeiture of the remainder property. Thus, the superior court should not have ordered forfeiture of the remainder property as a matter of law. For the sake of brevity, we focus on just a few examples of disputed issues.

¶ 48 In its reply, the State asserted an affidavit by G.P., a tow truck driver who assisted the Collazo Organization in recovering vehicles seized by law enforcement, "establishes the association among the Collazo Organization, Noe [Auto Sales], and Mr. [Campos] personally." As evidence Campos committed an act involving the enumerated offense of a scheme or artifice to defraud and relying on G.P.'s affidavit, the State asserted G.P.

would be given titles on which his name had been placed for the sole purpose of deceiving law enforcement into the belief that [G.P.] owned the vehicle that had been seized, causing the vehicles to be released to him, which he then returned to the Collazo Organization along with the sham titles.

Further, G.P. acknowledged in his deposition he worked for and received fees from Collazo for recovering vehicles. While G.P. did such work for Collazo,[18] he testified in his deposition that Campos never gave him a title of a vehicle to retrieve and that he never received fees from "anyone employed at Noe Auto Sales" to pick up vehicles. The State cannot obtain forfeiture as a matter of law based on an act involving a scheme or artifice to defraud if its own witness denies the claimant or any of his employees ever committed such an offense.

¶ 49 The State also asserted in its reply Campos committed an act involving the enumerated offense of a scheme or artifice to defraud by accepting false identifications when selling vehicles. Although employees of Noe Auto Sales accepted clearly doctored identification documents in the February 2004 sale and although Noe Auto Sales deal jackets[19] revealed some questionable identification documents, such as two drivers' licenses with different names but the same picture, the State failed to provide evidence Campos knowingly used false documents or made false documents as a scheme or artifice to defraud. Although the State argued a comparison of the deal jackets to statewide data-

17. The State supported its motion for partial summary judgment with a Statement of Facts and exhibits, but it also incorporated by reference its Application for Order of Forfeiture in Rem; its Reply to the Application for Order of Forfeiture in Rem and exhibits; its Statement of Facts and Exhibits submitted in response to Campos's motion for summary judgment; R.M.'s July 2008 affidavit; and various portions of Campos's Statement of Facts and Exhibits in support of his motion for summary judgment. Although Rule 56 does not preclude incorporation by reference, the State did not explain the role each piece of evidence was meant to play in its motion. Rule 56(c)(2) requires a moving party to refer to specific portions of the record where each specific fact may be found. Here, the State's incorporation by reference only broadly identified motions and exhibits without any explanation of their significance.

18. Even if Campos was linked to Collazo, the type of human smuggling Collazo allegedly engaged in was not an enumerated offense when Campos's assets were seized in 2004. "Smuggling of human beings" was added as an enumerated offense effective January 1, 2006. 2005 Ariz. Sess. Laws, ch. 308, § 3 (1st Reg.Sess.).

19. According to R.M.'s July 2008 affidavit, a deal jacket is "a folder or large envelope containing information related to a specific sales transaction." Deal jackets often include "proof of date of birth, social security card, buyer's address, credit history, buyer's financial statement, method [of] payment or financing, and vehicle purchased."

bases revealed "indicia of fraud," it failed to show Campos (or anyone else employed by Noe Auto Sales) (1) had access to those databases; (2) should have consulted them before making sales; or (3) had the requisite knowledge he or she was receiving fraudulent identification documents. Rather than the incontrovertible proof the State alleged, J.F. testified he accepted "mismatched identification" only "a couple of times" and never put fictitious names on sales contracts.

¶ 50 In its reply, the State asserted "[a]ll of the conduct described in the Affidavit of [G.P.] violated A.R.S. § 13–2311, a felony racketeering statute, as alleged in the Complaint at ¶¶ 16 and 19." Paragraphs 16 and 19 of the complaint alleged Campos had sold vehicles with "false liens to facilitate the recovery of the vehicles in the event seized during smuggling operations" and had "agreed to place liens on vehicles to assist in vehicle recovery in the event seized during smuggling activities." Despite these allegations, G.P. stated in his own affidavit, although he was "familiar with this practice" of placing false liens on vehicles purchased for cash, he had never recovered a vehicle for Collazo using a false lien. In direct contradiction to G.P., R.M. stated, in his July 2008 affidavit, G.P. "recovered ... vehicles" that had been purchased from Noe Auto Sales through the use of false liens. Also, J.F. testified he never put a false lien on a vehicle other than in the February 2004 sale. Despite the State's repeated assertions that Campos committed a scheme or artifice to defraud, clear issues of fact existed within the evidence presented to the superior court as to whether Campos committed an act involving this enumerated offense.

¶ 51 The State asserted in its reply that Campos committed an act involving the enumerated offense of forgery, A.R.S. § 13–2301(D)(4)(b)(iv), by forging or falsely notarizing G.P.'s signature on titles. Once again, notwithstanding the fact G.P. was working for Collazo and the State advised the court Collazo was not part of the case, the State presented inconsistent evidence as to the frequency of these alleged forgeries. R.M. stated, in his July 2008 affidavit, "[i]n almost every instance" the title histories he re-

viewed contained forged signatures of G.P. In his affidavit, however, G.P. stated "[i]n some instances" his signature had been forged on title transfers that had been notarized and "[i]n some instances" his actual signature had been notarized without his knowledge or presence. Additionally, as shown above, G.P. testified Campos never gave him a title to pick up and he never received fees from anyone at Noe Auto Sales to pick up vehicles. Thus, even if forgery of G.P.'s signature occurred, conflicting evidence existed as to whether Campos or any Noe Auto Sales employee committed an act involving the enumerated offense of forgery.

¶ 52 Finally, the State's removal of the Collazo Organization from the case presents the question of which acts allegedly involving enumerated offenses were properly before the superior court at partial summary judgment. In his July 2008 affidavit, R.M. stated, in his "expert opinion," Campos "committed, facilitated and or attempted fraud, fraudulent schemes, money laundering, and concealment in an attempt to benefit from the *sales of automobiles to illegal alien smuggling organizations.*" (Emphasis added.) The State rested its allegations on the purported connection between Noe Auto Sales and the Collazo Organization; thus, when the State advised the superior court Collazo was out of the case, we must ask, What was left? Taking the State at its word that Collazo was not involved and given the existence of genuine issues of material fact regarding the commission of acts involving enumerated offenses other than in the February 2004 sale, the State was not entitled to forfeiture of the remainder property.

¶ 53 The preceding examples reveal that genuine issues of material fact existed as to whether Campos committed acts involving enumerated offenses other than money laundering. The State did not provide undisputed evidence Campos committed forgery, a scheme or artifice to defraud, or any other enumerated offense that could constitute racketeering and lead to forfeiture of the remainder property. As a result, we reverse in part the superior court's entry of partial summary judgment and remand for further proceedings consistent with this opinion.

438

## CONCLUSION

¶ 54 For the foregoing reasons, we reverse the order of forfeiture in rem because of the State's waiver, affirm the grant of partial summary judgment to the State as to forfeiture of certain property linked to the February 2004 sale, reverse the grant of partial summary judgment and forfeiture of the remainder property, and remand for further proceedings consistent with this opinion.

¶ 55 Campos requests an award of his attorneys' fees and costs incurred on appeal pursuant to A.R.S. § 13–2314(A). That statute allows a prevailing defendant "against whom a racketeering claim has been asserted" to receive reasonable attorneys' fees and costs. Campos has not yet prevailed in this matter, and thus his request for fees and costs under the statute is premature. We therefore deny his request without prejudice to its consideration by the superior court upon the conclusion of this case. Nevertheless, because Campos has prevailed on appeal we award him costs on appeal subject to his compliance with Arizona Rule of Civil Appellate Procedure 21.

CONCURRING: LAWRENCE F. WINTHROP, Presiding Judge and PATRICK IRVINE, Judge.